2022 IL App (1st) 190422
No. 1-19-0422
Opinion filed September 30, 2022

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 CR 11401 |
| EARL DAWSON, | ) ) | The Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva concurred in the judgment and opinion.
Justice Mitchell dissented, with opinion.

**OPINION**

¶ 1        Defendant, Earl Dawson, was convicted by a jury of the offense of armed habitual criminal and sentenced to 12 years with the Illinois Department of Corrections (IDOC).

¶ 2        On this direct appeal, defendant claims (1) that the State failed to prove beyond a reasonable doubt that he had the requisite predicate adult convictions necessary to sustain his armed habitual conviction, where he was only 17 years old when he committed the predicate offenses, (2) that the trial court erred by permitting the State to introduce course-of-investigation testimony regarding a nearby shooting, and (3) that defendant's 12-year sentence

was excessive where the trial court improperly relied on defendant's prior convictions that were already factors implicit in the offense and disregarded mitigating factors, such as the nature of the instant offense.

¶ 3    With respect to the first claim, both parties argue in the alternative that we should reduce his armed habitual conviction to the lesser included offense of aggravated unlawful use of a weapon. For the foregoing reasons, we reduce defendant's armed habitual conviction to the lesser included offense of aggravated unlawful use of a weapon and remand for resentencing.

¶ 4                                    I. BACKGROUND

¶ 5    The evidence at trial showed that police officers responded to a radio dispatch on July 20, 2017, about a shooting in the area. The dispatch described the subject as a "male black with a red shirt running in an alley." After driving to the area, one of the officers observed defendant running from an alley and observed that defendant fit the description provided in the dispatch. Chasing defendant on foot, the officer followed defendant into a residence where the officer observed defendant pull a dark object from his waistband and place it on top of a laundry basket behind a door. After defendant was detained and handcuffed, the police recovered two firearms from the top of the laundry basket: a Smith & Wesson 9-mm. handgun and a Jennings 9-mm. handgun. Over defendant's objection, the trial court granted the State's request to certify two police officers as experts in fingerprint analysis. One of the officers testified that an inked fingerprint card from defendant shared 20 characteristics with the ridge impressions recovered from the grip of the Jennings handgun and that eight characteristics in the same relative positions usually indicates that the prints came from the same individual. The trial court gave the jury a limiting instruction that defendant was not accused of a shooting and that there was

"no evidence" that defendant "was involved in" a shooting. Regarding his prior convictions, the parties stipulated as follows:

> "ASSISTANT STATE'S ATTORNEY (ASA) KELLY PETERSON: Now come the People of the State of Illinois by their attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistant Kelly Peterson and Maurice Alayo and the defendant, Earl Dawson, through his attorney, Rocio Armendariz, and stipulate as follows:
>
> That the defendant, Earl Dawson, has previously been convicted of two qualifying felony offenses.
>
> With that, Your Honor, the State would rest.
>
> THE COURT: Is that stipulated to, Ms. Armendariz?
>
> MS. ARMENDARIZ: So stipulated."

¶ 6　　After the State rested, the defense rested, and the trial proceeded to closing arguments. After listening to arguments and jury instructions, the jury acquitted defendant of the count of armed habitual criminal predicated on the Smith & Wesson handgun but found him guilty of the count of armed habitual criminal predicated on the Jennings handgun.

¶ 7　　Defendant's posttrial motion for a new trial alleged a number of errors, including that the trial court erred in permitting information about the alleged shooting to be introduced at trial. On February 7, 2019, the trial court denied the motion and proceeded to sentencing.

¶ 8　　In aggravation, the ASA noted that defendant was on supervised release for two prior armed robberies when the instant offense occurred. Specifically, the ASA stated that defendant had been on "non-mandatory supervised release until January 22, 2010," for the robberies.

3

These armed robberies had served as the predicate offenses for defendant's armed habitual conviction.

¶ 9      The ASA stated that defendant had received concurrent 8-year sentences for the robberies and described them as follows.[1] The ASA stated that, on February 5, 2013, at 5:50 p.m., defendant approached a woman on the street, displayed a semi-automatic black pistol, and demanded her property. After the woman gave him her headphones, iPad and purse, he demanded that she give him the code to her iPad which she did. The victim later identified defendant from a photo array.

¶ 10      With respect to the other robbery, the ASA stated that, a couple of weeks earlier, on January 20, 2013, at 6:50 p.m., a woman approached a bus stop, observed defendant and two other men there, and decided to walk to a different bus stop. Defendant and the two men followed her to the second bus stop, where defendant pulled out a semiautomatic black pistol from his front waistband and demanded her property. One of the two other men also displayed his own handgun, and the victim gave defendant her iPhone. Defendant then pushed the victim, who fell down on the sidewalk. After she fell, defendant kicked her in the ribs three times and fled. The victim identified defendant in a lineup.

¶ 11      Although the armed robberies occurred in 2013, the PSI indicated that defendant had been sentenced for both robberies on November 7, 2016, by the same judge. The PSI reported the case numbers for the two armed robberies as 13 CR 0551801 and 13 CR 0551001. The P.S.I. stated that defendant's birthdate was December 3, 1995. This birthdate meant that defendant was 17 years old when the underlying robberies were committed, was 20 years old when he was sentenced for them, and was 21 years old when the instant offense occurred. The

---

[1]Defense counsel did not object to or correct the ASA's description of the prior offenses.

PSI did not indicate whether or not defendant pled guilty to the robbery offenses or when he was convicted of them.

¶ 12     In mitigation, defense counsel argued that defendant had received his G.E.D. on June 11, 2018, while incarcerated for the instant offense, and had been accepted to Arizona State University in Phoenix, Arizona. Prior to his arrest for the instant offense, defendant was employed as a cook at a local restaurant. The PSI reported that defendant "denied having any juvenile adjudications of delinquency" and that the computer system "reflected no juvenile adjudications." The PSI also indicated that defendant had no gang affiliation, was never married, and had no children.

¶ 13     The trial court sentenced defendant to 12 years with IDOC, which the court observed was "half of the maximum sentence." After the sentence was pronounced, defense counsel immediately tendered a motion to reconsider sentence which the trial court denied. A timely notice of appeal was filed by defendant the same day, and this appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     On this appeal, defendant argues, first, that his two prior offenses were not qualifying predicates for his conviction of armed habitual criminal, and he asks this court to reverse his conviction or, in the alternative, to reduce his conviction to the lesser included offense of aggravated unlawful use of a weapon. Second, defendant argues that he was deprived of his right to a fair trial when the trial court permitted course-of-investigation testimony concerning a nearby shooting. Third, defendant claims that the trial court improperly sentenced defendant to an excessive sentence based on factors inherent in the offense. Since we are remanding for resentencing for other reasons, we do not address defendant's third claim. For the reasons explained below, we reduce defendant's conviction to the lesser included offense of aggravated

unlawful use of a weapon and remand for resentencing. In addition, we do not find persuasive defendant's claim that the trial court erred by permitting course-of-investigation testimony about a shooting.

¶ 16                                A. Predicate Convictions

¶ 17        First, defendant claims that the State failed to prove the requisite predicate convictions for the offense of armed habitual conviction.

¶ 18        As a preliminary matter, we observe that the State does not argue that defendant forfeited this claim either by failing to object in the court below or by stipulating to the offenses at trial. *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003) ("It is well established that the State may waive waiver."); *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 29 (providing a list of cases that had found that the State may forfeit a claim of forfeiture by failing to raise it); *People v. Skillom*, 2017 IL App (2d) 150681, ¶ 24 ("the State forfeited any argument concerning defendant's forfeiture by failing to raise it").[2] Thus, we proceed to consider the issue that both parties briefed for us.

¶ 19        Generally, when considering a challenge to the sufficiency of the evidence at trial, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Aljohani*, 2022 IL 127037, ¶ 66. However, in this appeal,

---

[2]In addition, forfeiture is a limit on the parties and not the reviewing court. We may decline to find forfeiture where necessary to obtain a just result and preserve the integrity of the judicial process. *People v. Phillips*, 2022 IL App (1st) 181733, ¶ 156; *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. Finding a defendant guilty of an offense that was not an offense at the time that he committed it would adversely affect the integrity of the judicial process. See *People v. Melecio*, 2017 IL App (1st) 141434, ¶ 64 (forfeiture did not apply to a violation of the one act, one crime rule); see also *People v. Miles*, 2020 IL App (1st) 180736, ¶ 8 (the appellate court found that defendant could challenge Class X sentencing based on a conviction committed while a minor because "[a] sentence that is not statutorily authorized affects a defendant's substantial rights and is reviewable as second prong plain error.").

defendant argues that the key facts are not in dispute and the only question is whether those facts satisfy the elements of the armed habitual criminal statute. Defendant is correct that the key fact regarding his claim is undisputed and the State does not argue otherwise. It is undisputed that, when defendant committed the two alleged predicate offenses in 2013, he was 17 years old.

¶ 20    The interpretation of a statute presents a question of law that we review *de novo*. *People v. Howard*, 2016 IL App (3d) 130959, ¶ 18 ("applying the undisputed facts to the language of the statute to determine whether the essential elements have been proven *** is a question of law that we review *de novo*"); *People v. Chirchirillo*, 393 Ill. App. 3d 916, 921 (2009) ("Because the relevant facts are uncontested and the issue concerns whether these uncontested facts establish the elements of [the offense], we review *de novo* defendant's claim."); *People v. Anderson*, 364 Ill. App. 3d 528, 532 (2006) (*de novo* review applies "not just to the question of whether a statute was properly construed but also to whether the statutory elements were satisfied by the undisputed facts").

¶ 21    "With statutory construction, our primary goal is to ascertain the legislat[ors'] intent, and the best indication of their intent is the plain and ordinary meaning of the words they chose to use." *People v. Miles*, 2017 IL App (1st) 132719, ¶ 25; *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23). Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003); *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 44 ("If the statutory language is clear, we must apply it, without resort to any aids of statutory construction.").

¶ 22     Defendant was convicted under a statute that provides, in relevant part:

>      "(a) A person commits the offense of being an armed habitual criminal if he or she
>
>      *** possesses *** any firearm after having been convicted a total of 2 or more times
>
>      of any combination of the following offenses:
>
>>          (1) a forcible felony as defined in Section 2-8 of this Code[.]" 720 ILCS 5/24-
>>
>>          1.7(a)(1) (West 2016).

Section 2-8 of the Criminal Code of 2012 (Code) defines " '[f]orcible felony' " to include robbery. 720 ILCS 5/2-8 (West 2016). The State concedes in its brief, as it must, that the word "convicted," as used in the armed habitual statute, requires a finding of guilt and a sentence imposed in an adult criminal court and does not include a juvenile adjudication. *People v. Taylor*, 221 Ill. 2d 157, 171 (2006) (a juvenile adjudication is not a prior criminal conviction for the purpose of criminal statutes requiring a prior conviction as an element of the offense).

¶ 23     The armed habitual statute, quoted above, was last amended in 2011. 720 ILCS 5/24-1.7 (West 2016); Pub. Act 96-1551, art. 1 (eff. July 1, 2011). Thus, the words quoted above were in effect in 2013, when the 17-year old defendant was arrested for the underlying armed robberies; in 2016, when he was sentenced for them; and in 2017, when he was arrested for the instant offense. Also, section 2-8 of the Code, which defines the term "forcible felony," was last amended in 1996. 720 ILCS 5/2-8 (West 2016); Pub. Act 89-462, art. 2 (eff. May, 29, 1996). As a result, robbery was included as a forcible felony in 2013, when defendant was arrested for the predicate robberies, as well as in 2017, when he was arrested for the instant offense.

¶ 24     Although the armed habitual statute did not change between 2013 and 2017, the Juvenile Court Act of 1987 (Act) did, and that is the crux of the dispute. 705 ILCS 405/1-1 *et seq.* (West 2016).

¶ 25     In 2013, when the 17-year old defendant committed the underlying armed robberies, section 5-120 of the Act provided: "Except as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2012). Section 5-120 provided that juvenile proceedings could be instituted under the Act for "any minor who prior to the minor's 17th birthday has violated or attempted to violate" any law. 705 ILCS 405/5-120 (West 2012). Since defendant was over 17 years old when he committed the armed robberies, he was prosecuted in adult court for them, rather than being adjudicated in a juvenile proceeding.

¶ 26     However, in 2014, the law changed. Effective January 1, 2014, and still in effect today, section 5-120 of the Act provides that "[e]xcept as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2016).

¶ 27     Defendant argues that, if his 2013 offenses had been committed in 2017, when he was prosecuted for armed habitual, he may not have received adult convictions for them. Thus, under the law in effect in 2017, he may not have had the two predicate adult convictions required by the armed habitual statute. Since the State has the burden to prove the elements of the statute beyond a reasonable doubt, defendant argues that the State failed in its burden.

¶ 28        The State, for its part, argues that defendant could still have been prosecuted as an adult, even under the law in effect in 2017. The State argues that defendant's prosecution as an adult was still possible because of the discretionary transfer exception listed in the "[e]xcept as" clause of section 5-120. 705 ILCS 405/5-120 (West 2016). Since the State argued specifically regarding the exception for discretionary transfer, we will not dwell on section 5-120's other exceptions, for efficiency's sake.

¶ 29        Before discussing discretionary transfer, we will, however, touch briefly on one of the other exceptions listed in section 5-120, namely, section 5-130. 705 ILCS 405/5-130 (West 2016).

¶ 30        Effective January 1, 2016, armed robbery was removed from section 5-130's list of exclusions.[3] Pub. Act 99-258, § 5 (eff. Jan. 1, 2016). The removal occurred after defendant's armed robbery offenses were committed, but before defendant was sentenced for them on November 7, 2016. Put another way for our purposes, armed robbery, when committed with a firearm, was excluded from juvenile jurisdiction in 2013,[4] when defendant committed the armed robberies at issue, but was not excluded from juvenile jurisdiction in 2017, when the instant armed habitual offense was committed. Compare 705 ILCS 405/5-130(1)(a) (West 2012), with 705 ILCS 405/5-130(1)(a) (West 2016).

---

[3]Although, in the text above, we speak of one "list" of exclusions, there are actually nesting lists, or exclusions within exclusions. Section 5-120 has a list of 4 exceptions, providing that "[e]xcept as provided in Sections [1] 5-125, [2] 5-130, [3] 5-805, and [4] 5-810 of this Article, no minor who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2016). Section 5-130, which is named in Section 5-120, then contains its own list of exclusions. Specifically, section 5-130 excludes from the definition of delinquent minor those minors who committed a certain list of offenses. 705 ILCS 405/5-130(1)(a) (West 2016).

[4]Defendant was thus excluded twice over in 2013 from juvenile jurisdiction: by both age and offense.

¶ 31        At issue in the case at bar is the third exception, section 5-805, which provides for both the presumptive and discretionary transfers of juveniles to adult criminal court. 705 ILCS 405/5-805 (West 2016). The presumptive transfer section applies when a minor has previously been adjudicated or found guilty of a forcible felony *and* the act was in furtherance of gang activity. 705 ILCS 405/5-805(2)(a) (West 2016). However, here, the ASA at sentencing did not allege gang activity in his description of the prior offenses, and the PSI did not indicate gang membership.

¶ 32        Therefore, the State argues that the discretionary transfer provision could have still been invoked by the State to transfer defendant to adult court (if he had not already been subject to adult court under prior laws).[5] The discretionary transfer provision permits the State to petition to transfer "a minor 13 years of age or over" to adult court on the ground that "it is not in the best interests of the public to proceed under this Act." 705 ILCS 405/5-805(3)(a) (West 2016). To grant the petition, all a trial court has to find is that there is probable cause to believe (1) that the allegations in the State's petition are true and (2) that a juvenile proceeding is not in the public's best interests. 705 ILCS 405/5-805(3)(a) (West 2016). This "probable cause" standard is much lower than the "clear and convincing" standard, for example, required for a presumptive transfer. Compare 705 ILCS 405/5-805(3)(a) (West 2016), with 705 ILCS 405/5-805(2)(b) (West 2016). The discretionary transfer provision lists the factors that a trial court "shall consider" in making its determination, including whether the minor possessed a deadly weapon—which defendant did possess in both armed robberies at issue here. 705 ILCS 405/5-805(3)(b)(iii)(E) (West 2016).

---

[5]The discretionary transfer provision was also in effect in 2013, when defendant committed the armed robberies, but the State did not need to invoke it because defendant was automatically subject to adult criminal court by other provisions.

¶ 33    Defendant could have been transferred—*if* the State had petitioned and *if* the trial court had granted the petition—but the State did not. There is no way to know for certain what would have happened. *Cf. People v. O'Neal*, 2021 IL App (4th) 170682, ¶ 102 ("[E]ven with the amendment to the Juvenile Court Act, a 17-year-old who commits armed robbery still faces possible discretionary transfer to adult court. [Citation.] We are unwilling to take it as a given that, under the amendment, defendant's prior case would have remained in juvenile court.").

¶ 34    The State argues that this amendment is not to be given retroactive effect. We first look to the statute itself, section 5-120, which provides as follows: "The changes made to this Section by this amendatory Act of the 98th General Assembly apply to violations or attempted violations committed on or after the effective date of this amendatory Act." 705 ILCS 405/5-120 (West 2016). The effective date of January 1, 2014, is clear and unequivocal. However, what is not clear is the effect of this date on the facts here. One could argue that this sentence means that the changes do not apply to his 2013 armed robberies, so that the robberies could still serve as predicates for his armed habitual conviction. However, on the other hand, one could also argue that this sentence means that the changes apply to his armed habitual conviction, which certainly happened after January 1, 2014, and which certainly includes the predicates as an element.[6] Thus, we do not find this language from section 5-120 to be plain or dispositive of the issues before us.

---

[6]Additionally, the fact that the statute used the word "violation" as opposed to "offense" should not be construed to be limited to juvenile offenses only. The word "violation" in this sentence could refer to a juvenile violation, to an adult offense, or to both. An example of the word "violation" being used to describe an adult conviction is to be found in the armed habitual statute itself. In a different subsection, the armed habitual statute notes that a qualifying adult conviction includes "any *violation* of the Illinois Controlled Substances Act *** that is punishable as a Class 3 felony or higher." (Emphasis added.) 720 ILCS 5/24-1.7(a)(3) (West 2016).

¶ 35     We are not the first court to write regarding the effect of the Juvenile Court Act's age change on predicate offenses, but we are the first court in this district to issue an opinion regarding this particular subsection of the armed habitual statute: subsection (a)(1), which requires the predicate to be a felony "as defined in Section 2-8 of this Code." 720 ILCS 5/24-1.7(a)(1) (West 2016).

¶ 36     Both parties cite and discuss *People v. Gray*, 2021 IL App (1st) 191086, which also discusses the application of the armed habitual statute to a juvenile conviction but with respect to a different subsection. In that case, the defendant argued that the use of the present tense in a different subsection of the armed habitual statute—namely, subsection (a)(3)—meant that he had to be convicted of conduct that "is" punishable as a felony. 720 ILCS 5/24-1.7(a)(3) (West 2016) ("is punishable"); *Gray*, 2021 IL App (1st) 191086, ¶¶ 11-12 ("Gray's argument centers on the tense of the Criminal Code's verb."). In *Gray*, the defendant challenged the use of a narcotics conviction as a predicate for armed habitual because he was a juvenile at the time of the narcotics offense. *Gray*, 2021 IL App (1st) 191086, ¶ 9. The subsection of the armed habitual statute that applies to narcotics offenses requires the State to prove a "violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a)(3) (West 2016).

¶ 37     However, the subsection in the case at bar is different, and it does not use the phrase "is punishable." 720 ILCS 5/24-1.7(a)(3) (West 2016). In the case at bar, the State had to prove that defendant had been convicted of a forcible felony "as defined" in Section 2-8 of this Code. 720 ILCS 5/24-1.7 (a)(1) (West 2016).

¶ 38     The State in *Gray* argued that a juvenile, even under today's law, is still eligible for an adult conviction, if the case is transferred to adult court. *Gray*, 2021 IL App (1st) 191086, ¶ 12.

The *Gray* court agreed that for a defendant, such as the defendant before it, to be presently convicted of narcotics delivery, the State would have to prove either that the defendant was 18 years old "or that the defendant merited transfer to the criminal courts" under current transfer provisions. *Gray*, 2021 IL App (1st) 191086, ¶ 15 (discussing *People v. Reed*, 2020 IL App (4th) 180533). The *Gray* court found that, due to the restrictive nature of the transfer provisions and the recent changes in the Act, "for most offenses, age of the defendant operates as an element of the offense." *Gray*, 2021 IL App (1st) 191086, ¶ 15. In the case before it, the *Gray* court reversed the conviction, since the State did not seek a lesser-included offense. *Gray*, 2021 IL App (1st) 191086, ¶ 16.

¶ 39        In support of its holding, the *Gray* court cited *People v. Miles*, 2020 IL App (1st) 180736. *Miles* concerned a different statute than either the statute at issue in *Gray* or in the case at bar. *Miles* concerned the Class X sentencing statute, whereas both Gray and the case at bar concerned the armed habitual statute. In *Miles*, the defendant had been convicted of burglary and sentenced, based on his criminal history, as a Class X offender. *Miles*, 2020 IL App (1st) 180736, ¶ 1. On direct appeal, he argued that his criminal history did not qualify him for Class X sentencing, since one of the prior qualifying offenses was an armed robbery committed when he was 15 years old. *Miles*, 2020 IL App (1st) 180736, ¶¶ 1, 3. The defendant's argument was based on the language of section 5-4.5-95(b) of the Code, which provided that, when a defendant over 21 years old is convicted of a Class 1 or 2 felony, Class X sentencing is mandatory if he has previously been convicted twice "of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class" felony. 730 ILCS 5/5-4.5-95(b) (West 2016) (discussed in *Miles*, 2020 IL App (1st) 180736, ¶ 5).

14

¶ 40        As noted, the statutory language in *Miles* is different from the language at issue in the case at bar. The statutory language in *Miles* made clear that the legislators thought of this age-related issue and specifically addressed it. The fact that the legislators already thought of it is clear from their reference specifically to 21-year olds, and their decision on this issue is clear from their requirement of "the same elements as an offense now." 730 ILCS 5/5-4.5-95(b) (West 2016). Accordingly, the *Miles* court reversed the sentence and remanded the case for resentencing. *Miles*, 2020 IL App (1st) 180736, ¶ 24; accord *People v. Martinez*, 2021 IL App (1st) 182553, ¶ 63; *People v. Williams*, 2020 IL App (1st) 190414, ¶¶ 1, 15.[7]

¶ 41        The Fourth District has repeatedly disagreed with the First District's finding in *Miles* and disagreed with the First District's reading of the "now" language in the Class X sentencing statute. *O'Neal*, 2021 IL App (4th) 170682, ¶ 102; *Reed*, 2020 IL App (4th) 180533, ¶ 24. Nevertheless, we find that *Miles*, *Martinez*, *Williams*, *O'Neal*, and *Reed* were all interpreting a completely different statute—namely, the statute governing Class X sentencing—rather than the armed habitual statute that is at issue here.[8] As always, the starting place for statutory analysis is the plain language of the statute in front of us, and the plain language of the two statutes is indisputably different.

¶ 42        In *People v. Irrelevant*, 2021 IL App (4th) 200626, ¶ 36, the Fourth District did interpret the same statute, and the same subsection, involved in the instant case and found that

---

[7]In *People v. Williams*, 2021 IL App (1st) 191615, ¶ 31, the First District found that *Miles* and *Gray* did not control the outcome of the case before it because the issue before it was whether counsel was ineffective for not raising this type of challenge in 2015. The First District found that counsel's performance could not be considered "objectively unreasonable" when he did not object many years earlier to the use of a conviction committed by a minor as a predicate for an armed habitual charge. *Williams*, 2021 IL App (1st) 191615, ¶ 31. As a result of *Williams*, we do not find persuasive defendant's argument in the alternative that counsel was ineffective for failing to make this argument.

[8]Similarly, the case that the Illinois Supreme Court recently heard oral argument on concerns Class X sentencing rather than the statute before us. See *People v. Stewart* 2020 IL App (1st) 180014-U, ¶ 1.

the defendant's age at the time of the underlying offense was of no consequence. The Fourth District quoted subsection (a) in full, which we provide below:

"(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation, aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7 (2016).

¶ 43    The Fourth District found that the above language was plain and meant: "for a defendant's conviction to serve as a predicate conviction for the offense of being an armed habitual criminal, the conviction must be for an offense described in subsections (a)(1) through (a)(3) *at the time of the underlying conduct that resulted in the armed habitual criminal charge*." (Emphasis added.) *Irrelevant*, 2021 IL App (4th) 200626, ¶ 35.

¶ 44    The above finding completely comports with the First District's finding in *Gray* that the armed habitual statute has a "present tense" component—as in, the law presently in effect at the time that the armed habitual offense was committed. *Gray*, 2021 IL App (1st) 191086, ¶¶ 11-12.

¶ 45    While the two districts are in complete agreement about the present-tense nature of the required predicates, they diverge as follows. In *Gray*, the First District found that age was a relevant consideration, whereas, in *Irrelevant*, the Fourth District held that, to determine whether the predicate was currently an offense, one looked to elements only and ignored age. Compare *Gray*, 2021 IL App (1st) 191086, ¶¶ 11-12, with *Irrelevant*, 2021 IL App (4th) 200626, ¶ 36 ("the fact [that] defendant was 17 years old when he committed the 1983 offense for which he was convicted is irrelevant").

¶ 46    We cannot, however, ignore the burden of proof. The burden of proof is on the State to prove, beyond a reasonable doubt, that the defendant had two qualifying convictions. As the State concedes in the case at bar, this means two adult convictions. The burden is not on the defendant to prove that the convictions were juvenile proceedings.

¶ 47    Like the panels in both *Gray* and *Irrelevant*, we find that the statute in front of us has a present-tense component. In *Gray*, the subsection at issue required the State to prove that the offense "is punishable," whereas in the case at bar, the qualifying phrase was "as defined." 720 ILCS 5/24-1.7(a) (West 2016). "[A]s defined" means as presently defined. 720 ILCS 5/24-1.7(a)(1) (West 2016). The present sense is further reinforced by the use of the word "this," in "this Code." 720 ILCS 5/24-1.7(a)(1) (West 2016); see *People v. Davis*, 408 Ill. App. 3d 747, 751 (2011) ("the armed habitual criminal statute does not punish a defendant for his prior convictions but, rather, for a new and separate subsequent crime"). In addition, a statute must be interpreted as a whole. *People v. Leib*, 2022 IL 126645, ¶ 28 ("We construe the statute as a whole ***."). It would make little sense to interpret one sub-subsection as requiring an offense that "is" currently punishable, while interpreting another sub-subsection to refer to a past time. 720 ILCS 5/24-1.7(a)(3) (West 2016).

¶ 48        Thus, we find that the burden was on the State to prove, beyond a reasonable doubt, that defendant had two qualifying adult convictions under the law in effect at the time of his armed habitual offense; and this, the State failed to do.

¶ 49        Both parties ask us, in the alternative, to reduce defendant's conviction to the lesser included offense of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (West 2016)) for the Jennings handgun, pursuant to the authority granted to us by Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967). We grant this request, as Rule 615(b) provides in relevant part: "On appeal the reviewing court may *** (3) reduce the degree of the offense of which the appellant was convicted ***." Ill. S. Ct. R. 615(b)(3) (Jan. 1, 1967). Our supreme court has found that "Rule 615(b)(3) provides the appellate court with broad authority to reduce the degree of a defendant's conviction, even when the lesser offense is not charged and the State did not request an instruction on the lesser offense at trial." *People v. Kennebrew*, 2013 IL 113998, ¶ 25; *People v. Figueroa*, 2020 IL App (2d) 160650, ¶¶ 76, 78-82 (the appellate court reduced a conviction to a lesser included offense where the State failed to prove an element of the offense).

¶ 50        In the case at bar, the indictment charged defendant with four counts of AUUW for possession of the Jennings handgun: (1) for carrying it while it was uncased, loaded, and immediately accessible without a valid concealed carry permit (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2016)), (2) for carrying it without a Firearm Owner's Identification Card (FOID card) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2016)), (3) for carrying it uncased, loaded, and immediately accessible on a public street or alley without a concealed carry permit (720 ILCS 5/24-1.6(a)(2), (a)(3)(A-5) (West 2016)), and (4) for carrying it on a public street or alley without a FOID card (720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2016)). Since the State

proceeded to trial on only the armed habitual charge, no evidence was presented at trial to show that defendant did or did not have either a concealed carry permit or a FOID card. Nevertheless, both a felony conviction and a juvenile adjudication for an offense that would be a felony, if committed by an adult, prohibit an applicant from obtaining either a concealed carry permit or a FOID card. 430 ILCS 65/4(a)(2)(ii), (xii) (West 2020) (felony conviction bars issuance of FOID card and juvenile adjudication for a felony bars issuance of FOID card); 430 ILCS 66/25(2) (West 2020) (concealed carry applicant must first meet requirements for issuance of a FOID card). As such, defendant's prior armed robberies precluded him from obtaining a FOID card. Therefore, we reduce defendant's armed habitual conviction to the lesser offense of AUUW, based on carrying the Jennings gun without a FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2016)) and remand for resentencing consistent with this opinion.

¶ 51                    B. Course of Investigation Testimony

¶ 52        Defendant argues that the trial court erred by admitting, over his objection, the State's course-of-investigation testimony, which was admitted to explain why officers were chasing him.

¶ 53        Evidentiary rulings by the trial court, such as the one we are asked to review, are generally within the sound discretion of the trial court and are generally not reversed by an appellate court unless the trial court abused its discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "The decision whether to admit evidence cannot be made in isolation," and the "trial court must consider a number of circumstances that bear on that issue, including questions of reliability and prejudice." *Caffey*, 205 Ill. 2d at 89. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Caffey*, 205 Ill. 2d at 89. Our supreme court

has repeatedly admonished its appellate courts that reasonable minds may differ without requiring reversal under an abuse-of-discretion standard of review. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 54    Defendant alleges that the trial court erred in admitting the officers' testimony about the radio dispatch, which led them to be in the area and to chase defendant. Normally, a radio dispatch by an out-of-court declarant would be considered hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). "The fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant." *Jura*, 352 Ill. App. 3d at 1085. However, statements are not hearsay when admitted for the limited purpose of showing the course of a police investigation because then the statements are not being admitted for the truth of the matter asserted in the statements, but to explain why the investigating officers, who heard those statements, took the steps that they did. *Jura*, 352 Ill. App. 3d at 1085.

¶ 55    Even though not hearsay, statements may still be excluded if they are unduly prejudicial. Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Evidence is unduly prejudicial if it tends to lead the factfinder to decide facts on an improper basis. *People v. Lewis*, 165 Ill. 2d 305, 329 (1995).

¶ 56    In the case at bar, defendant moved pretrial to exclude the officers' course-of-investigation testimony about why they were in the area and why they chased defendant. Defense counsel argued:

> "DEFENSE COUNSEL: So I'm just asking for a limiting testimony. I know that officers have to testify why they were in the area in order for it to make sense.

THE COURT: They have to show why they went to a location and why they did certain things and why they chased somebody and why they chased him all the way in the house and looking for certain things. That's all fair game. *** I will tell the jury that he's not accused of any shooting, that he's not charged with any shooting, that the only reasons they are hearing that is not for the truth of the matter asserted, but just to indicate why the police were—say that they were at a location and say that they acted in a certain way. So, I will give a limiting instruction as to that.

DEFENSE COUNSEL: And part of my motion is that none of it should come out. It should just be that the officers were told to go in the area and saw him running. I don't believe any shooting is admissible.

THE COURT: Well, to say that—to have a complete vacuum as to why the police are chasing somebody from the street into a house wouldn't make any sense."

The trial court found that, "[o]therwise," without this information, "it just seems like [the police] are out there randomly barging into people's homes for no reason whatsoever." Instead, the trial court stated that it would provide a limiting instruction.

¶ 57 During the trial, the trial court provided the jury with a limiting instruction stating that defendant was not accused of a shooting and that there was "no evidence" that defendant "was involved in" a shooting:

"THE COURT: Let me make it clear, Ladies and Gentlemen. This is about—receiving a call about shots, that's not for the truth of the matter asserted. That's to indicate what the officer is saying that he heard and why he acted and did certain things accordingly.

21

[Defendant] is not accused of shooting anybody. That's not what this case is about. And I want you to only understand that the only reason you're hearing about that is not to say that somebody was actually shot. There's certainly not—there's no evidence that [defendant] was involved in that, but just [to] indicate why the officer was where he was and did what he did."

¶ 58    Immediately prior to the jury deliberations, the trial court again reminded the jurors: "Any evidence that was received for a limited purpose should not be considered by you for any other purpose."

¶ 59    We cannot find that the trial court abused its discretion by finding that omitting the dispatch would leave "a complete vacuum as to why the police are chasing somebody." In addition, to the extent that the dispatch about shots fired was prejudicial, that prejudice was minimized by the trial court's admonishment that there was "no evidence" that defendant was "involved" in a shooting. As a result, we do not find this claim persuasive.

¶ 60    Defendant cites *Jura*, 352 Ill. App. 3d 1080, and *People v. Edgecombe*, 317 Ill. App. 3d 615 (2000), but both those cases are readily distinguishable.

¶ 61    In *Jura*, the defendant was convicted of unlawful use of a weapon by a felon. The evidence at trial established that, after receiving a radio dispatch about a man with a gun, the police arrived at the specified location, only to find five men present, including defendant. The State introduced testimony that the radio dispatch had further described the one with the gun as a white male, 6 feet tall, with a teardrop tattoo on his face, under his right eye. The officers testified that, except for defendant, none of the other men had teardrop tattoos on their faces. After the officers arrived, the defendant threw a gun into a garbage can and fled down an alley but was quickly apprehended. *Jura*, 352 Ill. App. 3d at 1082-1084 (describing the facts). The

appellate court found that it "could accept the State's argument that it used the hearsay merely to explain the investigation undertaken by the police," if the State had not repeatedly relied on the " 'fact' " that it was the defendant who matched the description, despite the trial court sustaining an objection to this question. *Jura*, 352 Ill. App. 3d at 1088-89. The appellate court found that this error was not harmless, in light of the credibility dispute between defendant and the police at trial about who possessed the gun. *Jura*, 352 Ill. App. 3d at 1091.

¶ 62        *Jura* is readily distinguishable from the case at bar, where the radio description in *Jura* was used to distinguish the defendant from among a group of possible other suspects also present at the scene and where no limiting instruction was provided. By contrast, in the case at bar, the trial court did give a limiting instruction and the dispatch was not used to distinguish defendant from other suspects also present at the scene. In addition, in *Jura*, the defendant started running upon seeing the police and was apprehended outside. See *Illinois v. Wardlow*, 528 U.S. 119, 123-25 (2000) ("[h]eadlong" flight immediately upon seeing the police enter an area, combined with presence in a high-crime area, supports a finding of reasonable suspicion). As a result, the State in *Jura* needed less explanation for the police chase than in the case at bar, where defendant was already running when the police arrived and the police ran after him into a home.

¶ 63        *Edgecombe* is also distinguishable from the case at bar. In *Edgecombe*, the defendant was convicted of armed robbery. The evidence at trial established that, after the robbery, the victim reported that three men had robbed him and drove off, and he provided a description of the three men and their car. Officer Julian testified at trial that, while at the scene, he received a radio call from another officer, who stated that the police had stopped a car matching the description provided by the victim, that the car contained three men, and that the three men

fled but one was apprehended. The one apprehended at this point was not defendant. Minutes later, the victim identified the apprehended man as one of the three robbers and identified the car as the car that they had fled in. Defendant was later apprehended, and the victim identified defendant from both a photo array and lineup as another robber. *Edgecombe*, 317 Ill. App. 3d at 617, 626-27 (description of facts).

¶ 64        The appellate court in *Edgecombe* reversed and remanded for a new trial, based solely on certain remarks by the State that highlighted the defendant's "failure to testify" and that improperly shifted the burden of proof. *Edgecombe*, 317 Ill. App. 3d at 624. Although not reversing based on the defendant's other claims, the appellate court still addressed them "because they might arise on retrial." *Edgecombe*, 317 Ill. App. 3d at 624. Among those other claims was defendant's claims about the radio call, and the appellate court found that it was error to admit the call's contents. *Edgecombe*, 317 Ill. App. 3d at 627.

¶ 65        As noted, *Edgecombe* is inapposite from the case at bar. In *Edgecombe*, the hearsay put in front of the jury, without any limiting instruction,[9] was another officer's assertion, in essence, that the defendant ran upon seeing the police. The fact that the defendant ran at that moment was completely unnecessary for explaining what the police did next. *Edgecombe*, 317 Ill. App. 2d at 627. By contrast, in the case at bar, we cannot find that the trial court abused its discretion by concluding that the jurors needed some explanation of why the police suddenly started chasing defendant through the street and into a home. Without it, the jury may very well may have been tempted to engage in jury nullification. As the trial court explained,

---

[9]With respect to another claim, the *Edgecombe* court noted that the trial court's prompt "instruction to the jury *** cured any improper prosecutorial comments." *Edgecombe*, 317 Ill. App. 3d at 626.

"[o]therwise it just seems like they are out there randomly barging into people's homes for no reason whatsoever." Thus, we do not find this claim persuasive.

¶ 66                                    III. CONCLUSION

¶ 67        For the foregoing reasons, we reduce defendant's armed habitual conviction to the lesser included offense of AUUW and remand for resentencing.

¶ 68        Reversed and remanded.

¶ 69        JUSTICE MITCHELL, dissenting:

¶ 70        The General Assembly created the crime of "armed habitual criminal" to protect people from repeat offenders who possess guns.[10] The Criminal Code reads in relevant part: "A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of *** a forcible felony ***." 720 ILCS 5/24-1.7(a)(1) (West 2016). A "forcible felony" includes robbery or any felony that involves the use or threat of physical force or violence against any individual. *Id.* § 2-8. A jury convicted our defendant, Earl Dawson, as an armed habitual criminal in 2018, based in part upon his two convictions from 2013.

¶ 71        The majority concludes that Dawson's two armed robbery convictions do not qualify as predicate offenses supporting his latest conviction as an armed habitual criminal. They reason that the legislature subsequently amended the Juvenile Court Act in 2014 and raised the age limit for prosecution in adult criminal court from 17 to 18. The General Assembly, however, made the amendment prospective only: "The changes made to this Section by this amendatory Act of the 98th General Assembly apply to violations or attempted violations

---

[10]*People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27 ("The armed habitual criminal statute was enacted to help protect the public from the threat of violence that arises when repeat offenders possess firearms.").

*committed on or after* [January 1, 2014,] the effective date of this amendatory Act." (Emphasis added.) 705 ILCS 405/5-120 (West 2016). By its plain terms, the 2014 amendment has no application to Dawson's 2013 convictions or to Dawson's 2018 conviction, when he was no longer a juvenile.

¶ 72    With robbery included in the list of forcible felonies at all relevant times (720 ILCS 5/2-8 (West 2016)), the State has met its burden to prove, beyond a reasonable doubt, that Dawson's two convictions in 2013 satisfy the predicate convictions element of the offense of being an armed habitual criminal.

¶ 73    For these reasons, I respectfully dissent. I would affirm Dawson's armed habitual criminal conviction.

2022 IL App (1st) 190422

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-11401; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Deborah K. Pugh, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Stacia Weber, Assistant State's Attorneys, of counsel), for the People. |