2024 IL App (1st) 221951-U

Fourth Division
Filed March 28, 2024

No. 1-22-1951

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| Plaintiff-Appellee, | ) Circuit Court of Cook County |
| | ) |
| v. | ) No. 21 CR 01407 |
| | ) |
| CORTEZ HERRION, | ) The Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) The defendant's prior conviction for residential burglary was properly alleged as a predicate for charging him with being an armed habitual criminal. (2) The record was inadequate to resolve the claim that defense counsel was ineffective for failing to move to suppress the gun.

¶ 2    Following a jury trial, defendant Cortez Herrion was found guilty of one count of armed habitual criminal and sentenced to nine years in prison. On appeal, he argues that his prior conviction for residential burglary, which he committed when he was 17 years old, cannot serve as a predicate for armed habitual criminal because an intervening expansion in juvenile-court jurisdiction means that it would be treated today as a delinquency matter, not an adult criminal prosecution. He also argues that defense counsel's failure to file a motion to suppress the gun he was found guilty of possessing amounted to ineffective assistance. We reject his first argument and decline to reach his second argument. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In 2021, the State filed an indictment charging Herrion with being an armed habitual criminal.[1] See 720 ILCS 5/24-1.7(a) (West 2020). The indictment alleged that Herrion had two prior qualifying convictions, including a conviction for residential burglary that Herrion committed when he was 17 years old. Before trial, Herrion did not move to dismiss the indictment or suppress evidence of the gun he was charged with possessing.

¶ 5      The evidence at Herrion's jury trial established that, on December 26, 2020, two Chicago police officers were on patrol in the Englewood neighborhood in an unmarked vehicle when they encountered a Nissan SUV that was missing a front license plate, bore an expired back license plate, and had one taillight that was out. They pulled the Nissan over, and both officers got out and approached it. Officer Kenneth Brink went to the driver's door, and Detective Jeffrey Lawson went to the passenger's door. Herrion was sitting in the front passenger's seat wearing a jacket and a shoulder bag. Both officers smelled the odor of cannabis coming from the Nissan. When the driver was unable to produce a valid license, Brink ordered him to get out of the car, and he complied. Herrion also got out of the car when ordered to by Lawson. Once Herrion was out of the car, Lawson did a brief pat-down search and felt what he thought might be a gun inside the shoulder bag. When Lawson went to retrieve his handcuffs, Herrion ran, and a short chase ensued. During the chase, Herrion let the shoulder bag fall to the ground, and it was retrieved by an officer who had originally come to the scene to provide back-up for the traffic stop. After Herrion was apprehended, Brink opened the bag and found, among other things, a loaded handgun, a small amount of cannabis, and Herrion's identification card, credit card, and social security card.

¶ 6      Lawson testified at trial. He explained that his role during the stop was to be the "guard officer" by keeping watch over Herrion while Brink interacted with the driver. When Brink pulled the driver out of the car, Lawson thought the Nissan might end up being seized, so he ordered

---

[1]   The indictment also charged him with aggravated unlawful use of a weapon and two counts of unlawful use or possession of a weapon by a felon, but the State voluntarily dismissed those charges before trial.

Herrion out, too. Lawson admitted that, up until that point, he had not seen Herrion doing anything wrong. The bag was and had remained closed, and Herrion had not gone into it or gestured toward it. When Herrion got out of the car, Lawson decided "[f]or safety purposes" to "conduct[] a protective pat down" of the shoulder bag. Upon placing his hand on the bag, Lawson felt something that, from his experience and training, was likely to be a gun, which is why he decided to detain Herrion.

¶ 7     The parties stipulated that Herrion had "previously been convicted of two qualifying felony offenses." The jury found him guilty.

¶ 8     After trial but before sentencing, Herrion filed a motion to dismiss the armed-habitual-criminal charge, arguing that his residential-burglary conviction could not serve as a predicate for armed habitual criminal because he had only been 17 years old at the time of the offense. The trial court denied the motion to dismiss, and it sentenced Herrion to nine years' imprisonment.

¶ 9                              II.  ANALYSIS

¶ 10    On appeal, Herrion argues that the trial court erred when it denied his motion to dismiss the armed-habitual criminal charge. He also argues that his attorney's failure to move to suppress the gun denied him his right to the effective assistance of counsel.

¶ 11                    A.  Predicate for Armed Habitual Criminal

¶ 12    Herrion argues that if he had committed the residential burglary offense in 2020, the case would have been resolved with delinquency proceedings in juvenile court rather than criminal proceedings. We review the construction of statutory language *de novo. People v. Bradford*, 2016 IL 118674, ¶¶ 14-15.

¶ 13    As a preliminary matter, we note Herrion argues that the issue was preserved, and even if it is forfeited, the issue can be reviewed under plain-error review. The State argues that Herrion forfeited this argument as he did not object during the pendency of the case or preserve the issue in his motion for a new trial. Under the plain-error doctrine, forfeiture can be excused when "a clear and obvious error occurred" and either (1) "the evidence is so closely balanced that the error

alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Therefore, the first step is to determine whether there was a clear or obvious error. *Id.* As explained below, we find no error occurred.

¶ 14    Being an armed habitual criminal is a defined offense under Illinois law. A person commits that offense by, among other things, possessing "any firearm after having been convicted a total of 2 or more times of any combination" of offenses specified in the statute. 720 ILCS 5/24-1.7(a) (West 2020). Those predicate offenses include any "forcible felony as defined in Section 2-8 of [the Criminal] Code." *Id.* § 24-1.7(a)(1). The predicate convictions alleged in this case were for residential burglary and robbery, which are both forcible felonies. *Id.* § 2-8. The parties agree that a juvenile-delinquency adjudication is not a conviction for purposes of armed habitual criminal. See *People v. Taylor*, 221 Ill. 2d 157, 163-82 (2006) (holding that a juvenile who had been adjudicated delinquent had not been "convicted of a felony" under the statute defining the offense of escape).

¶ 15    Herrion acknowledges that, when he committed residential burglary as a 17-year-old in 2009, he was subject to prosecution in criminal court under then-existing law. As he points out, though, a 2014 amendment to the Juvenile Court Act of 1987 expanded juvenile-delinquency jurisdiction to 17-year-olds. Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120). Because the conduct that led to his conviction in the 2009 case would have resulted in a delinquency adjudication had it been committed today, he reasons, that conviction cannot serve as a predicate for armed habitual criminal. In support of his argument, Herrion relies on *People v. Gray*, 2021 IL App (1st) 191086, *rev'd on other grounds*, 2024 IL 127815, and *People v. Dawson*, 2022 IL App (1st) 190422.

¶ 16    In *Gray*, the defendant was found guilty of being an armed habitual criminal. *Gray*, 2021 IL App (1st) 191086, ¶ 6. One of the defendant's prior convictions was for delivery of narcotics, which he committed at age 17 in 2002. *Id.* On appeal, he challenged the sufficiency of the evidence

to sustain his conviction, arguing that the narcotics conviction could not serve as a predicate offense because, under current law, he would have been adjudicated in juvenile court. *Id.* ¶ 8. The court agreed, finding that "for most offenses [the] age of the defendant operates as an element of the offense" and that the defendant's 2002 conviction for delivery of narcotics could not serve as a predicate offense under the armed-habitual-criminal statute. *Id.* ¶¶ 15-16. Based on that legal determination, it held that the evidence at trial was insufficient to sustain his conviction. *Id.* ¶ 16; *contra* 2024 IL 127815, ¶ 27 (holding that the evidence was sufficient to sustain the conviction because the defendant stipulated that he had been convicted of two qualifying offenses).

¶ 17    In *Dawson*, the defendant was found guilty of being an armed habitual criminal. *Dawson*, 2022 IL App (1st) 190422, ¶ 1. The defendant argued his prior convictions for armed robbery did not qualify as predicate offenses under the armed-habitual-criminal statute because he was 17 years old at the time he committed the offenses. *Id*. ¶ 19. The court agreed, found the State had not proved beyond a reasonable doubt that the defendant had two qualifying convictions at the time he was alleged to have committed armed habitual criminal, and reduced the defendant's conviction to aggravated unlawful use of a weapon. *Id*. ¶¶ 48, 50.

¶ 18    The State argues *People v. Wallace*, 2023 IL App (1st) 200917, is instructive. In *Wallace*, the court rejected the defendant's reliance on *Gray*. *Id.* ¶ 36. The defendant was found guilty of being an armed habitual criminal and argued on appeal the State failed to establish that his prior conviction for armed robbery with a firearm was a predicate offense because he was 17 years old at the time of the offense. *Id.* ¶¶ 31-32. The court disagreed with *Gray*, finding that age does not operate as an element of armed habitual criminal because the statute does not contain any reference to age. *Id.* ¶¶ 37-38. It therefore concluded that "defendant's age does not change the fact that he was 'convicted,' nor does it change the fact that armed robbery is a forcible felony." *Id*. at 38.

¶ 19    Additionally, in *People v. Irrelevant*, 2021 IL App (4th) 200626, the defendant argued that his conviction for residential burglary could not serve as a predicate conviction under the armed-habitual-criminal statute because he was 17 years old at the time he committed the offense and if he had committed it in 2016 it would have resulted in a juvenile adjudication. *Irrelevant*, 2021 IL

App (4th) 200626, ¶ 26. The court explained that, based on the language of the statute, "for a defendant's conviction to serve as a predicate conviction for the offense of being an armed habitual criminal, the conviction must be for an offense described in subsections (a)(1) through (a)(3) at the time of the underlying conduct that resulted in the armed habitual criminal charge." *Id.* ¶ 35. The court found "the fact that [the] defendant was 17 years old when he committed the 1983 offense for which he was convicted is irrelevant—all that matters is that defendant had a conviction, and that conviction was for an offense described in subsection (a)(1) at the time defendant committed the underlying conduct." *Id.* at 36.

¶ 20 We agree with *Wallace* and *Irrelevant* that, for the purposes of armed habitual criminal, all that matters is that the defendant has a prior conviction for one of the specified offenses. In arguing otherwise, Herrion asks us to read language into the armed-habitual-criminal statute that is not there. We also note that, when it expanded juvenile-court jurisdiction to 17-year-olds, the legislature provided that the amendment would apply prospectively "to violations or attempted violations committed on or after the effective date" of the amendment. 705 ILCS 405/5-120 (West 2014). Contrary to that express legislative intent, Herrion's interpretation would effectively give that amendment retroactive effect. Although Herrion was 17 years old when he committed the offense, the fact remains that he was convicted of residential burglary, which is forcible felony and therefore a predicate under subsection (a)(1) of the armed-habitual-criminal statute. Because that conviction could properly be used as a predicate for armed habitual criminal, the circuit court did not err in denying Herrion's motion to dismiss.

¶ 21 As there was no error, we find no plain error. *People v. Hood*, 2016 IL 118581, ¶ 18 ("In applying the plain error doctrine, it is appropriate to determine first whether error occurred at all because 'without error, there can be no plain error.' ") (quoting *People v. Smith*, 372 Ill. App. 3d 179, 181 (2007)).

¶ 22                                  B.  Ineffective Assistance

¶ 23     Herrion next argues that trial counsel's failure to file a motion to suppress the gun he was found guilty of possessing amounted to ineffective assistance. The United States Constitution and Illinois Constitution guarantee criminal defendants the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's deficient performance, the result would have been different. *Stickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 24     By their nature, ineffective-assistance claims often turn on matters that are outside the trial record. To show that counsel performed deficiently, the defendant must rebut the presumption that the alleged errors were reasonable strategic or tactical decisions. See *id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). If the record does not show why counsel chose a particular course of action, it might be difficult or even impossible to overcome that presumption. *Cf. People v. Veach*, 2017 IL 120649, ¶ 51 (addressing ineffective-assistance claim on direct appeal because the record disclosed "defense counsel's reason for" taking the challenged action). Similarly, if the record does not show what would have happened had counsel performed competently, it may not be possible to determine whether the defendant was prejudiced. See *Strickland*, 466 U.S. at 696 (explaining that courts must evaluate "the effect of [counsel's] errors on" the outcome). For these reasons, when ineffective-assistance claims are raised on direct appeal, it is frequently the case that "the record is incomplete or inadequate for resolving the claim." *Veach*, 2017 IL 120649, ¶ 46. In those situations, the claim is better suited for collateral proceedings, and the reviewing court should decline to resolve it on direct appeal. See *People v. Williams*, 2019 IL App (3d) 160412, ¶¶ 36-37.

¶ 25     This is such a case. Herrion argues that Detective Lawson lacked a reasonable basis to suspect that he was armed and dangerous, which would mean that the pat-down search of the shoulder bag could not be justified as a protective frisk. See *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (recognizing that police officers have "a narrowly drawn authority" to conduct a protective frisk

without probable cause when the officer "has reason to believe that he is dealing with an armed and dangerous individual). But that was not the only possible basis for a constitutionally permissible search. Both of the officers involved with the stop testified that the Nissan smelled of cannabis, which may have provided probable cause to search the Nissan without a warrant. *People v. Stout*, 106 Ill. 2d 77, 88 (1985). And the scope of any such search would have included any closed containers—such as Herrion's shoulder bag—that could reasonably contain the sought-after contraband. *People v. Smith*, 95 Ill. 2d 412, 418 (1983) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

¶ 26    To be sure, *Stout* may no longer be good law. The stop in this case happened after a change to Illinois law legalized the possession of small amounts of cannabis starting on January 1, 2020. See 410 ILCS 705/10-5(a)(1) (West 2020) (added by Pub. Act 101-27, § 10-5 (eff. June 24, 2019)). Whether that partial legalization means that the odor of cannabis no longer provides probable cause for a vehicle search is an open question that our supreme court appears poised to decide. See People v. Redmond, No. 129201 (Ill. argued Jan. 10, 2024); People v. Molina, No. 129237 (Ill. argued Jan. 10, 2024). But even if the court holds that the odor of cannabis no longer provides probable cause, the ultimate question here is not whether the search was legal but whether counsel was ineffective. At the time of trial in this case, at least one Illinois case had held that *Stout* still "remain[ed] good law and binding precedent" unless and until the Illinois Supreme Court repudiated it. *People v. Rowell*, 2021 IL App (4th) 180819, ¶ 26. It is possible that Lawson held a good-faith belief that the search was specifically authorized by *Stout* and *Rowell*. See *People v. LaFlore*, 2015 IL 116799, ¶ 27 (citing *Davis v. United States*, 564 U.S. 229, 241 (2011)) (noting that the fruits of an illegal search will not be excluded when the officer reasonably relied on binding appellate precedent). Or there may have been circumstances not shown by the trial record that provided probable cause to believe that the cannabis that could be smelled was not being legally possessed. See *People v. Hill*, 2020 IL 124595, ¶ 35 (finding that a delay in following signal to pull over suggested that the defendant was trying to hide contraband and that the odor of raw cannabis indicated that, even if legally possessed for medicinal purposes, the cannabis was not

being stored in a sealed container as required by law). This is not to say that counsel was not ineffective. It is entirely possible that Lawson was well aware that the scent of cannabis might no longer provide probable cause or that there were no circumstances suggesting that the marijuana smell indicated illegal, as opposed to lawful, possession. The point is that the record before us does not allow us to draw a conclusion one way or the other, so we are unable to resolve the claim that counsel was ineffective.

¶ 27    Because the record does not disclose why counsel did not file a motion to suppress the gun or show whether such a motion would have succeeded, we conclude that it is inadequate for us to resolve Herrion's claim that counsel was ineffective. Instead, that claim is best raised in a collateral proceeding, such as one under the Post-Conviction Hearing Act (725 ILCS 5/art. 122 (West 2024)). See *Williams*, 2019 IL App (3d) 160412, ¶ 37. Based on our determination that the claim necessarily depends on facts that are not of record, "we see no risk of forfeiture on collateral review." *Id.*

¶ 28                              III.  CONCLUSION

¶ 29    Herrion's conviction for residential burglary could serve as a predicate for the armed-habitual-criminal charge even though he was only 17 years old at the time of the offense, so the trial court properly denied his motion to dismiss. The record does not allow us to resolve Herrion's claim that counsel was ineffective for not moving to suppress the gun, so we decline to reverse his conviction on that basis.

¶ 30    For these reasons, the judgment of the circuit court is affirmed.

¶ 31    Affirmed.