THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY JURA, Defendant-Appellant.

First District (6th Division)   No. 1—03—0329

Opinion filed September 24, 2004.

Michael J. Pelletier and Sean Collins-Stapleton, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Elizabeth Novy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court: Defendant was convicted of unlawful use of a weapon by a felon after a jury trial and sentenced to eight years in prison. On appeal defendant contends that because the jury heard hearsay testimony from three police officers, which was relied upon by the State in opening statement and closing argument, he was denied a fair trial. He also argues he was denied a fair trial because the trial court failed to properly instruct the jury, allowing the jury unlimited use of evidence of his prior conviction. Finally, defendant argues his trial counsel was ineffective for failing to object to the hearsay testimony and failing to request the trial court to properly instruct the jury regarding his prior conviction.

## BACKGROUND

At approximately 7:20 a.m. on June 30, 2001, two squad cars responded to a radio call of a man with a gun. As a result of the call, Officers John Fitzgerald and Tim Harts proceeded to the alley behind 2845 West 38th Street. Officers Paul Matthews and Steve Barsch arrived directly behind Fitzgerald and Harts. Four men were standing near the trunk of a car and defendant was near the hood of the car. According to the testimony provided by a police officer, defendant looked at the officers, moved toward a garbage can, and threw a gun into the garbage can. Defendant then ran down the gangway toward 38th Street, followed by Officers Barsch and Matthews. Barsch caught defendant, who was returned to the alley and placed in a squad car. The gun containing six live rounds was recovered from the garbage can. Defendant testified, contrary to the testimony of the police officers, that he never was in possession of the gun.

During trial three police officers, Fitzgerald, Matthews, and Barsch, testified for the State. We will discuss their testimony, challenged on appeal by the defendant as inadmissible hearsay, taking each witness in turn. Officer John Fitzgerald testified that on the morning of June 30, 2001, he received a radio call of a "person with a gun." No objection was made by defense counsel. When the prosecutor asked if the radio call gave any other information, Fitzgerald answered, "The description that was broadcast was a male White with a tattoo with a teardrop on his face." No objection was made by defense counsel.

The following testimony was further elicited by the State from Officer Fitzgerald regarding the radio call:

"THE STATE: Did it [the radio dispatch] give any location?

OFFICER FITZGERALD: Yes, it did.

THE STATE: What was the location.

OFFICER FITZGERALD: 2845 West 38th Street, in the alley.

THE STATE: Did it provide any other indicators in the description besides a White male with a teardrop, for instance, height?

OFFICER FITZGERALD: I think it might—

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Sustained."

Later, during the direct examination, Officer Fitzgerald testified that defendant matched the description provided by the radio call:

"THE STATE: When you turned into the alley, what, if anything, did you observe?

OFFICER FITZGERALD: We observed a person matching the description.

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Sustained.

THE STATE: Well, you testified that you heard a description on the radio, is that correct?

OFFICER FITZGERALD: Yes."

Further, during the direct examination of Officer Fitzgerald, the State asked the following:

"THE STATE: Were you able to observe if any of the four people had any teardrops on their face?

DEFENSE COUNSEL: Objection—I'll withdraw.

OFFICER FITZGERALD: No, they did not."

Officer Paul Matthews testified that he also received a radio call regarding a "person with a gun." That hearsay statement was elicited twice within the space of three questions asked by the State:

"THE STATE: When you were at 35th and Union, did you receive a radio call?

OFFICER MATTHEWS: There was a radio assignment dispatched and simulcast. We responded to a person with a gun call.

THE STATE: What do you mean by simulcast? Was that over your radio?

OFFICER MATTHEWS: It's over the radio and citywide radio as well.

THE STATE: What was it called?

OFFICER MATTHEWS: Person with a gun call."

No objection by defense counsel was made.

The prosecutor, directly following the above questions, elicited additional hearsay regarding the substance of the radio call by asking whether it contained any other information. Matthews testified that the call "[g]ave the location of 2845 West 38th Street in the alley, and it gave a description of the person as well." The prosecution elicited

further hearsay by asking what description was given and Matthews responded, "It was a male White, approximately six feet tall." No objection by defense counsel was made to any of the hearsay elicited by the State.

Officer Steve Barsch testified he was on routine patrol with his partner, Matthews, when he received a radio call regarding "a person with a gun at the location of 2845 West 38th Street in the alley." No objection was made by defense counsel. The prosecutor elicited additional substantive hearsay by asking if the radio call provided a description of the suspect. Officer Barsch answered, "Yes, there was. It described the person with a gun to be a White male, approximately six feet tall with a tattoo of a teardrop under his right eye." No objection by defense counsel was made to the detailed hearsay description elicited by the State.

Later, during the direct examination, the State questioned Officer Barsch as follows:

"THE STATE: Drawing your attention for a moment back to when you first arrived at the alleyway, and you said you observed the Defendant. You said you observed four other individuals standing towards the side back portion of the vehicle, is that correct?

OFFICER BARSCH: Yes.

THE STATE: Did they match this description that you were armed with when you got to the scene?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

THE STATE: Did any of the other individuals have teardrops or tattoos on their faces, if you remember?

OFFICER BARSCH: No, they did not."

Both Fitzgerald and Barsch testified none of the other four men in the alley with defendant had teardrop tattoos on their faces. Officer Barsch again mentioned the radio call during direct examination by testifying as follows: "The call came out as a person with a gun. There was a witness to him standing with a gun. I knocked on a few doors." No objection was made by defense counsel.

When the officers arrived, they observed five men standing by a car in the alley. Each of the three officers testified that when defendant saw them, he removed a handgun from his waistband, ran across the alley, threw the gun in a garbage can and ran through a gangway. Officers Matthews and Barsch chased defendant, arrested him, returned him to the alley, placed him in a squad car, and eventually took him to the police station.

## ANALYSIS

■ A defendant is guaranteed the right to confront the witnesses

against him by the confrontation clauses of both the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *People v. Smith*, 141 Ill. 2d 40, 76-77 (1990); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§ 801, 807 (7th ed. 1999). The fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant. *People v. Shum*, 117 Ill. 2d 317, 342 (1987). Statements are not inadmissible hearsay when offered for the limited purpose of showing the course of a police investigation where such testimony is necessary to fully explain the State's case to the trier of fact. *People v. Williams*, 181 Ill. 2d 297 (1998) (and cases cited therein). In the instant case, we address whether the statements elicited during testimony of three police witnesses were properly admitted to explain the police investigation. Admissibility of evidence is within the discretion of the trial court, and its ruling will not be reversed unless there has been an abuse of discretion. *People v. Ward*, 101 Ill. 2d 443 (1984).

A police officer may "testify about statements made by others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted, but is instead used to show the investigative steps taken by the officer leading to the defendant's arrest." *People v. Pulliam*, 176 Ill. 2d 261, 274 (1997). Regarding this principle, we find *People v. Trotter*, 254 Ill. App. 3d 514, 527 (1993), instructive:

> "Although a police officer may reconstruct the steps taken in a crime's investigation and may describe the events leading up to the defendant's arrest where such testimony is necessary and important to fully explain the State's case to the jury [citation], there is a distinction between an officer testifying to the fact that he spoke to a witness without disclosing the contents of that conversation and an officer testifying to the contents of the conversation. [Citation.] Under the investigatory procedure exception, the officer's testimony must be limited to show how the investigation was conducted, not to place into evidence the substance of any out-of-court statement or conversations for the purpose of establishing the truth of their contents. [Citation.] The police officer should not testify to the contents of the conversation [citation], since such testimony is inadmissible hearsay. [Citation.]" *Trotter*, 254 Ill. App. 3d at 527.

## A. USE OF HEARSAY EVIDENCE BY STATE

We first determine whether the various statements elicited by the State from the three police witnesses are inadmissible hearsay, and if they are, then whether their admission was harmless or reversible error. We note the hearsay statements elicited by the prosecution include

testimony by the three officers that they responded to a call of "a person with a gun," described as "a male White with a tattoo with a teardrop on his face," and that defendant "matched that description." Defendant contends the content of the radio call was inadmissible hearsay because it tended to prove that defendant was the "person with a gun," which was the issue in controversy at trial for the jury to decide. The State argues these various statements were not hearsay because they were not offered for their truth, but to explain police investigative procedure.

A police officer may testify regarding the steps taken in investigating a crime and describe the events leading up to the defendant's arrest when the evidence satisfies some relevant nonhearsay purpose. *People v. Simms*, 143 Ill. 2d 154, 174 (1991). The testimony of the officer regarding the words of the communication must not be used for their truth by the prosecution, but only used to show that the words were spoken when the fact they were spoken satisfies a relevant nonhearsay purpose. *Simms*, 143 Ill. 2d at 174.

The further inquiry that is helpful when the prosecution claims the words are being offered for a nonhearsay purpose and not being offered for the truth of the matter asserted was delineated in *People v. Warlick*, 302 Ill. App. 3d 595, 599 (1998), as follows:

"The trial judge first must determine whether the out-of-court words, offered for some purpose other than their truth, have any relevance to an issue in the case. If they do, the judge then must weigh the relevance of the words for the declared nonhearsay purpose against the risk of unfair prejudice and possible misuse by the jury." *Warlick*, 302 Ill. App. 3d at 599.

In the instant case, the radio call contained hearsay regarding the type of crime reported and the description of the suspect. The substance of the radio call was testified to repeatedly by Officers Fitzgerald, Matthews, and Barsch. The record reflects the hearsay statements fail to satisfy any relevant nonhearsay purpose. There was no issue regarding the reason why the officers proceeded to the alley behind 38th Street. *Williams*, 181 Ill. 2d at 313 (contents of radio call may be admitted where "necessary to fully explain the State's case to the trier of fact"). The prosecution merely needed to demonstrate that the officer was on duty, received a radio call, and as a result of that call proceeded to the alley behind 38th Street.

The three police witnesses went beyond explaining the investigative steps taken by testifying to the substance of the radio call, including the description of the offender. *People v. Thomas*, 199 Ill. App. 3d 79, 99 (1990) (officer went beyond explaining investigative procedure by including the content of the radio call, and the substance of call

was inadmissible hearsay; on retrial, officer may testify a citizen complaint was received and acted upon, but may not relate the substance of the radio call as to the citizen's complaint). In the instant case, the content of the radio call, including the type of crime reported and the description of the offender, was irrelevant in light of the testimony of all three police officers that they observed defendant with a gun fleeing down the alley. See *People v. Virgin*, 302 Ill. App. 3d 438, 446 (1998) (description of the offender contained in search warrant was irrelevant in light of the police testimony that defendant was observed fleeing from bedroom where drugs were found).

The content of the inadmissible hearsay was not limited to "person with a gun." Rather, under further questioning, the prosecution elicited the fact the radio call described the person with a gun in detail as a "male White with a tattoo with a teardrop on his face." During direct examination the State established that the white male with a tattoo of a teardrop was described as six feet tall and there was a witness who observed defendant "standing with a gun." *People v. Rivera*, 277 Ill. App. 3d 811, 820 (1996) (hearsay identifying defendant as perpetrator cannot be explained away as "police procedure"). The officers went on to testify that defendant matched the description contained in the hearsay. The State relied on that testimony in closing argument, although an objection had been sustained by the trial judge to the police testimony that defendant matched the hearsay description. *People v. Singletary*, 273 Ill. App. 3d 1076, 1085 (1995) (State's remarks in closing argument exceeded what was necessary to explain investigative procedures and were used to prove defendant's guilt).

The State, relying on *Williams*, 181 Ill. 2d at 313, argues that "the determination of whether the content of the radio dispatch was hearsay is based on the purpose for which it was offered and not the content." In the instant case, the State contends its purpose for offering the content of the radio call was to explain "police procedure." However, "[h]earsay testimony identifying the defendant as the one who committed the crime cannot be explained away as 'police procedure,' even where the trial judge limits the evidence to a non-hearsay purpose." *Rivera*, 277 Ill. App. 3d at 820. The investigatory procedure exception to the hearsay rule limits the officer's testimony for the purpose of establishing how the investigation was conducted and cannot be used to place into evidence the substance of any out-of-court statement or conversations offered for the truth of their contents. *People v. Mitran*, 194 Ill. App. 3d 344, 350 (1990). The police officer should not testify to the contents of the conversation. *People v. Henderson*, 142 Ill. 2d 258, 303 (1990).

The Illinois Supreme Court in *People v. Gacho*, 122 Ill. 2d 221

(1988), articulated how far the State can go in eliciting hearsay describing police investigative procedure. A police officer testified that he had a conversation with the victim, then began looking for the defendant. Although the jury might infer the victim had named the defendant, the *Gacho* court found the testimony admissible, but emphasized that had "the substance of the conversation *** been testified to, it would have been objectionable as hearsay." *Gacho*, 122 Ill. 2d at 248. We note that in *Gacho* the substance of the conversation would have gone to the very essence of the dispute: whether the defendant was the man who committed the crime. Thus, the substance of the conversation, if admitted, would have had the effect of proving the matter asserted. The testimony of the officer in *Gacho* that he spoke with the victim and then began looking for the defendant did not provide the substance of the conversation. Rather, it properly explained what investigation the officer undertook as the result of the conversation with the victim.

■ In the instant case, the substance of the various statements had the effect of proving the matter asserted. We find the repetition of the hearsay by each officer went beyond properly explaining what investigation was undertaken. *People v. Johnson*, 68 Ill. App. 3d 836, 843 (1979) (repetition by at least two witnesses of the hearsay statements together with State's reference in closing argument was reversible error). In addition to repeating the hearsay during the direct examination of the three police officers, the State relied on the substance of these statements in both opening statement and closing argument to prove that defendant matched the hearsay description of the man with a gun. *People v. Turner*, 91 Ill. App. 2d 436 (1968) (State's use of hearsay in closing argument was reversible error); *Singletary*, 273 Ill. App. 3d at 1085 (State's remarks in opening statement and closing argument went beyond what was necessary to explain investigative procedures and were used to establish defendant's guilt rather than explain police conduct). The substance of the hearsay statements relied upon by the State directly impacts the very essence of the dispute: whether the defendant was the man who possessed the gun. *Gacho*, 122 Ill. 2d at 248 (substance of conversation was objectionable hearsay because it would have gone to the very essence of the dispute: whether the defendant was the man who committed the crime); *People v. Jones*, 153 Ill. 2d 155, 160 (1992) (when words go to the very essence of the dispute, the scale tips against admissibility).

We emphasize that we could accept the State's argument that it used the hearsay merely to explain the investigation undertaken by the police had the State not elicited the hearsay repeatedly through the testimony of not one, but three witnesses; relied upon the hearsay

in opening statement; relied upon the hearsay in closing argument; and repeated the "fact" the hearsay description matched the defendant although the trial judge had sustained objection to this question and that "fact" was not in evidence. The record demonstrates the hearsay was used as substantive evidence to prove defendant guilty. For the reasons previously discussed, we find the hearsay was inadmissible. We next determine whether error in admitting the hearsay was harmless.

## B. ADMITTING HEARSAY WAS NOT HARMLESS ERROR

We are mindful that inadmissible hearsay will not require reversal if there is no reasonable probability the jury would have found the defendant not guilty had the hearsay been excluded. *People v. West*, 234 Ill. App. 3d 578, 590 (1992). Reversal is not required if we determine that the admission of the hearsay evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967). The issue of harmless error in the context of inadmissible hearsay was fully discussed in *Warlick*, 302 Ill. App. 3d at 601. The court in *Warlick* addressed whether the inadmissible "burglary in progress" testimony could have influenced the outcome of trial in deciding whether reversal was required. The court, in finding the inadmissible hearsay error harmless, noted:

> "Warlick's lawyer conceded the defendant was inside the recycling center without authority. He attempted to persuade the jury Warlick entered the center to escape the cold and snowy night. The State contended there was sufficient evidence to prove he entered with the intent to commit theft. The jury agreed with the State, and we do not see how absence of the police call would have made any difference." *Warlick*, 302 Ill. App. 3d at 601.

Unlike *Warlick*, where defense counsel conceded the defendant was inside the recycling center without authority, in the instant case, defendant denied possessing the gun and testified to that effect. Unlike *Warlick*, where one police officer testified to responding to a "burglary in progress" call, in the instant case, not one, but three police officers testified repeatedly to the various statements containing inadmissible hearsay. Unlike *Warlick*, where only one hearsay statement, "burglary in progress," was improperly introduced, in the instant case, repeated hearsay statements, replete with substantive information used to prove defendant guilty, were introduced, not through the testimony of one witness, but through the cumulative testimony of three witnesses. The inadmissible hearsay describing the type of crime reported as "man with a gun" was repeated at least four times during the testimony of the three police witnesses. Additional

inadmissible hearsay containing the detailed description of the man with a gun as a six-foot white male with a teardrop tattoo under his eye was repeated at least four times during the testimony of the three police witnesses.

In *Warlick*, when finding the admission of the "burglary in progress" hearsay harmless error, the court noted that "the State made no attempt to exploit the radio call during its final argument, in that way avoiding a potentially fatal exacerbation of the error." *Warlick*, 302 Ill. App. 3d at 601. In the instant case, the State did not avoid such potential fatal exacerbation. In addition to calling three witnesses who repeatedly provided cumulative testimony in the form of inadmissible hearsay statements, the State substantively relied on the improper hearsay in opening statement and closing argument.

In opening statement, the prosecution relied on the inadmissible hearsay by telling the jury a concerned citizen reported a man with a gun and gave a description, and that defendant fit that description as follows:

> "[Defendant] would have gotten away with carrying this gun on him except for somebody in the neighborhood who was concerned and called the police and reported that there was a man with a gun. They gave a description. Within minutes, four diligent police officers responded to that scene. Officer Harts and Officer Fitzgerald were in one car, and Officer Barsch and Officer Matthews were in the second car. When [the police] pulled into the alley, they saw four men, and one of them, the Defendant, fit that description, and they saw the Defendant with a gun."

In closing argument, the State again relied on the inadmissible hearsay as follows:

> "Please keep in mind that the testimony that you heard from each of those police officers and the witnesses, their testimony here today is evidence, and you are to consider that. You heard clear evidence from each of the police officers about the Defendant being in the alley that day. They all identified him. They identified the markings on his face. They heard the call over the radio. There's a person with a gun in this alley. They immediately went to the scene, and lo and behold, they saw a person who fit that description: the defendant, including the tattoo on his face."

Despite the fact that objection had been sustained regarding whether defendant matched the hearsay description, the State reminded the jury in closing argument that the defendant matched the description. That argument by the State relied on testimony which was not allowed by the trial judge. Closing argument by the State that relies on facts not in evidence is improper. *Rivera*, 277 Ill. App. 3d at 818 (State's comment on stricken testimony during closing argument

was reversible error). The State's remarks in opening statement and closing argument regarding the hearsay went beyond what was necessary to explain investigative procedures and were used as substantive proof of defendant's guilt rather than to explain police conduct. *Singletary*, 273 Ill. App. 3d at 1085 (hearsay statements exceeded explanation of investigatory procedure and were impermissibly used by the State to prove guilt in opening statement and closing argument).

■ In the instant case, the "concerned citizen" spoke volumes, but never entered the courtroom. The "concerned citizen" was never subjected to cross-examination. The repeated admission of the hearsay together with the use of the hearsay by the State was highly prejudicial. The outcome of the instant case was directly related to whether the jury believed defendant or the three officers called by the prosecution. The uncross-examined hearsay information provided by the "concerned citizen" directly contradicted the defendant's version and directly corroborated the officers' version of the events regarding the critical issue in the case: whether defendant was in possession of a gun.

Defendant denied possessing the gun and there were several other men standing in the alley with him when the officers responded to the call. The gun was recovered from a garbage can in the alley; however, no physical evidence connected defendant to the gun. This was strictly a question of credibility. Other than police witnesses, no civilian witnesses at trial corroborated the State's version of events. There is no question the credibility of the three officers was bolstered by the State's substantive use of the hearsay evidence provided by the "concerned citizen" who was never produced as a witness subject to cross-examination. Rather, the repeated use of the hearsay in opening statement, in closing argument, and with each of the police witnesses unfairly prejudiced defendant. The error in repetition of the hearsay by the police witnesses was exacerbated by the State's use of the hearsay in opening statement and closing argument. Based on the record, we cannot conclude that the use of the inadmissible hearsay was harmless beyond a reasonable doubt.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant argues that trial counsel provided ineffective assistance by the following: (1) failing to object to the admission of improper hearsay; (2) failing to object to the State's reliance on that inadmissible hearsay in opening statement and closing argument; and (3) failing to request the jury be instructed with Illinois Pattern Jury Instructions, Criminal, No. 3.13X (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.13X).

A defendant under both the United States and Illinois Constitutions has a due process right to the effective assistance of counsel in a criminal prosecution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Regarding ineffective assistance of counsel, a defendant must demonstrate both a deficiency in counsel's performance and prejudice resulting from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Prejudice is demonstrated if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. We are mindful that the prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show deficient performance of counsel rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

As previously noted, defense counsel at trial did not challenge the various hearsay statements by a motion *in limine* either before or during trial. No request was made by defense counsel to have the trial judge conduct the *Warlick* balancing test to determine whether the hearsay radio call was admissible by weighing "the relevance of the words for the declared nonhearsay purpose against the risk of unfair prejudice and possible misuse by the jury." *Warlick*, 302 Ill. App. 3d at 599. Defense counsel failed to ask the trial judge to conduct a hearing out of the jury's presence to determine both the scope of third-party out-of-court statements and the need for the jury to hear them. *People v. Cameron*, 189 Ill. App. 3d 998 (1989). A hearing conducted by the trial judge balancing the relevance of the words for the State's declared nonhearsay purpose against the risk of unfair prejudice and misuse by the jury would have weighed against admissibility. We further note that, because defense counsel failed to make a motion *in limine*, the experienced trial judge was not given the opportunity to declare the testimony inadmissible hearsay.

Other than very briefly, defense counsel failed to object to the repeated hearsay statements introduced, not through one witness, but through the testimony of three State witnesses. When given the opportunity by defense objection, the trial judge correctly sustained those objections. Officer Fitzgerald, Officer Matthews, and Officer Barsch testified to repeated hearsay with no defense objection regarding the type of crime reported and the description of the person committing that crime. With no objection from defense counsel the jury

heard repeatedly from the three police witnesses that they received a call of a "White male, approximately six feet tall with a tattoo of a teardrop under his right eye" with a gun in an alley. In opening statement, the State told the jury that defendant fit the "concerned citizen's" description. No objection by defense counsel was made during the State's opening statement when the State relied on various statements that were inadmissible hearsay. The information provided by the "concerned citizen" was again relied upon by the prosecution in its closing argument without any objection from defense counsel. No objection was made when the State argued in closing that defendant fit the description given by the "concerned citizen," although that testimony was not admitted in evidence.

No request for a limiting instruction was sought before the jury deliberated and the issue was not raised in a posttrial motion. Defense counsel failed to ask the trial judge for a limiting instruction explaining to the jurors the fact they could not rely on the hearsay as substantive evidence. Absent a limiting instruction, it cannot be presumed the jury's use of the hearsay evidence was limited to nonhearsay purposes. *Trotter*, 254 Ill. App. 3d at 527-28 (without a jury instruction that the hearsay testimony was introduced for the limited purpose of explaining what caused the police to act and that the jury was not to accept the statement as true, it cannot be presumed that the jury did not rely on the hearsay as substantive evidence).

The outcome of the instant case depended on whether the jury believed the defendant or the three police officers. The officers testified they saw defendant with a gun, but defendant denied possessing the gun and no physical evidence connected defendant to the gun. *Johnson*, 68 Ill. App. 3d at 843 (positive identification and corroborative circumstances did not ameliorate impact of repeated use of hearsay by State). As a result of trial counsel's failure to challenge the admissibility of the various hearsay statements repeated by all three officers, the jury was allowed to consider the hearsay information provided by the unknown "concerned citizen" as substantive evidence.

We are mindful that generally matters of trial strategy include what motions to make, whether to object, and what instructions to tender. *People v. Anderson*, 266 Ill. App. 3d 947, 956-57 (1994). However, in the context of the instant case, for the reasons previously discussed, defendant was prejudiced by defense counsel's deficient performance, which allowed the following to occur: (1) the jury to consider improper hearsay testimony repeatedly; and (2) the State in opening statement and closing argument to rely on the improper hearsay as substantive proof of defendant's guilt. Based on the record, we find a breakdown in the adversary system that was fundamentally

defective and deprived defendant of a fair trial. See *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525-28 (1984). In light of that finding, it is unnecessary to address defendant's additional allegations regarding jury instructions.

## CONCLUSION

■ The unlimited use by the State of hearsay which was not tested by cross-examination deprived defendant of a fair trial. That deprivation was only further compounded by the ineffective assistance provided by defense counsel in failing to properly challenge the admissibility of the hearsay evidence and its use in opening statement, closing argument, and repeatedly through the testimony of the three police officers who testified for the State.

The State, relying on *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988), argues that defendant has waived review of the hearsay issue because he failed to object at trial or preserve the issue in his motion for new trial. Issues not preserved for appeal may be considered under the plain error rule where the error affects substantial rights, or where the evidence is closely balanced. *People v. Keene*, 169 Ill. 2d 1, 17-18 (1995). Plain error marked by fundamental unfairness occurs in cases that reflect a breakdown in the adversary system, as distinguished from typical trial mistakes. *Keene*, 169 Ill. 2d at 17. For the reasons previously discussed, the repeated use by the State of the hearsay in the instant case, which went to the very essence of the dispute, together with defense counsel's repeated failure to limit the use of the hearsay, caused a breakdown in the adversary system that was fundamentally defective and deprived defendant of a fair trial.

We note the evidentiary issue regarding inadmissible hearsay has been repeatedly addressed by the Illinois Supreme Court and Illinois Appellate Court. See *Warlick*, 302 Ill. App. 3d at 598-600 (and cases discussed therein). The substantive use of inadmissible hearsay conversations between police officers and witnesses has been condemned for over 20 years. See *Singletary*, 273 Ill. App. 3d at 1088 (Egan, J., specially concurring). However, this evidentiary issue continues to occur with frequency in the trial of criminal cases. The hearsay error in the instant case was repeated, persistent, and pervasive. On retrial the officer may testify a citizen complaint was received and acted upon, but may not relate the substance of the radio call regarding the citizen's complaint.

For the reasons previously discussed, the case is reversed and remanded for retrial.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.