2025 IL App (1st) 190422-UB

FIFTH DIVISION
June 13, 2025

No. 1-19-0422

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11401 |
| | ) | |
| EARL DAWSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

## ORDER

¶ 1    *Held*: (1) defendant's trial counsel was not ineffective for stipulating to his prior qualifying felony convictions as predicates for the armed habitual criminal offense; (2) the trial court did not abuse its discretion in admitting police course-of-investigation testimony; and (3) defendant was not subject to improper double enhancement and his sentence was not an abuse of discretion.

¶ 2    Following a jury trial, Earl Dawson was convicted of the offense of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a), (b) (West 2016). On direct appeal, Mr. Dawson successfully argued, with one justice dissenting, that the State failed to prove beyond a reasonable doubt that he had the prior qualifying criminal convictions necessary to sustain his AHC

conviction. As a result, we reduced his conviction to the lesser-included offense of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (West 2016)) and remanded for resentencing. *People v. Dawson*, 2022 IL App (1st) 190422, ¶ 67.

¶ 3 On May 29, 2024, in the exercise of its supervisory authority, our supreme court directed this court to (1) vacate our September 30, 2022, judgment in this case, (2) consider the effect of the supreme court's subsequently decided opinion in *People v. Gray*, 2024 IL 127815, "on the issue of whether the State proved beyond a reasonable doubt that Mr. Dawson had the requisite predicate adult convictions necessary to sustain his [AHC] conviction," and (3) "determine if a different result [wa]s warranted." *People v. Dawson*, No. 129136 (Ill. May 29, 2024).

¶ 4 After vacating our prior judgment in this appeal, we granted the parties leave to each file a supplemental brief on the issues presented by the supreme court's supervisory order. In response, Mr. Dawson filed a brief in which he concedes, for purposes of this appeal, that at trial the State had "presented sufficient evidence to sustain [Mr. Dawson's] [AHC] conviction" based on his counsel's stipulation. However, Mr. Dawson argues that "a different outcome [i]s [not] warranted" because counsel was ineffective for stipulating to "qualifying" prior felony convictions. In response, the State argues that consideration of ineffective assistance exceeds the supreme court's mandate and, if we decide to reach this argument, Mr. Dawson's claim that the stipulation was ineffective assistance is without merit.

¶ 5 For the following reasons, we reject Mr. Dawson's argument that his lawyer's stipulation that he had qualifying prior convictions was ineffective assistance of counsel. We also incorporate our determination from our initial decision that the trial court did not abuse its discretion in allowing evidence about the police course-of-investigation. Finally, we reject Mr. Dawson's argument that the court's 12-year sentence rested on improper sentencing factors or was an abuse

of discretion. Because of our resolution of the merits of this appeal, we deny Mr. Dawson's motion for immediate release, which we took with the case.

¶ 6                                    I. BACKGROUND

¶ 7      Prior to trial, Mr. Dawson moved to exclude the officers' course-of-investigation testimony about why they were in the area and why they chased him. Defense counsel argued:

> ["DEFENSE COUNSEL]: So I'm just asking for a limiting testimony. I know that officers have to testify why they were in the area in order for it to make sense.
>
> THE COURT: They have to show why they went to a location and why they did certain things and why they chased somebody and why they chased him all the way in the house and looking for certain things. That's all fair game.
>
> *** I will tell the jury that he's not accused of any shooting, that he's not charged with any shooting, that the only reasons they are hearing that is not for the truth of the matter asserted, but just to indicate why the police were—say that they were at a location and say that they acted in a certain way. So, I will give a limiting instruction as to that.
>
> [DEFENSE COUNSEL]: And part of my motion is that none of it should come out. It should just be that the officers were told to go in the area and saw him running. I don't believe any shooting is admissible.
>
> THE COURT: Well, to say that—to have a complete vacuum as to why the police are chasing somebody from the street into a house wouldn't make any sense."

¶ 8      The trial court found that, "[o]therwise," without this information, "it just seems like [the police] are out there randomly barging into people's homes for no reason whatsoever." Instead, the trial court stated that it would provide a limiting instruction.

¶ 9      The trial occurred on November 8, 2018. The evidence at trial showed that police officers

3

responded to a radio dispatch on July 20, 2017, about a shooting in the area. The dispatch described the subject as a "male black with a red shirt running in an alley." After driving to the area, one of the officers observed Mr. Dawson running from an alley and observed that he fit the description provided in the dispatch. Chasing Mr. Dawson on foot, the officer followed him into a residence where the officer observed Mr. Dawson pull a dark object from his waistband and place it on top of a laundry basket behind a door. After Mr. Dawson was detained and handcuffed, the police recovered two firearms from the top of the laundry basket: a Smith & Wesson 9-mm handgun and a Jennings 9-mm handgun.

¶ 10    Over Mr. Dawson's objection, the trial court granted the State's request to certify two police officers as experts in fingerprint analysis. One of the officers testified that an inked fingerprint card from Mr. Dawson shared 20 characteristics with the ridge impressions recovered from the grip of the Jennings handgun. The expert testified that eight characteristics in the same relative positions generally indicates that the prints came from the same individual.

¶ 11    The parties stipulated that Mr. Dawson had previously been convicted of two qualifying felony offenses. Defense counsel agreed to several other stipulations, including to the proposed testimony of the officer who recovered the firearms from "a laundry bag," to a "proper chain of custody" for the firearms, and to the fingerprints taken from Mr. Dawson. Mr. Dawson did not testify or present any evidence.

¶ 12    During the trial, the trial court provided the jury with a limiting instruction stating that Mr. Dawson was not accused of a shooting and that there was "no evidence" that Mr. Dawson "was involved in" a shooting:

"THE COURT: Let me make it clear, Ladies and Gentlemen. This is about—receiving a call about shots, that's not for the truth of the matter asserted. That's to indicate

4

what the officer is saying that he heard and why he acted and did certain things accordingly.

Mr. Dawson is not accused of shooting anybody. That's not what this case is about. And I want you to only understand that the only reason you're hearing about that is not to say that somebody was actually shot. There's certainly not—there's no evidence that Mr. Dawson was involved in that, but just [to] indicate why the officer was where he was and did what he did."

¶ 13    Immediately prior to the jury deliberations, the trial court again reminded the jurors: "Any evidence that was received for a limited purpose should not be considered by you for any other purpose."

¶ 14    During jury instructions, the court told the jury that, to find Mr. Dawson guilty, it had to find that the State had proven two propositions: (1) "that the defendant possessed any firearm"; and (2) "that the defendant had previously been convicted of two qualifying felony offenses." The court further instructed the jury that, in this case, "the State has proved beyond a reasonable doubt the proposition that the defendant has previously been convicted of two qualifying felony offenses."

¶ 15    The jury acquitted Mr. Dawson of the AHC count predicated on the Smith & Wesson handgun but found him guilty of the AHC count predicated on the Jennings handgun.

¶ 16    In his motion for a new trial, Mr. Dawson asserted a number of errors, including that the trial court erred in permitting information about the alleged shooting to be introduced at trial. On February 7, 2019, the trial court denied the motion and proceeded to sentencing.

¶ 17    In aggravation, the State described Mr. Dawson's criminal history, which consisted of the two armed robberies that the State used as predicate offenses. Both robberies occurred in 2013, when Mr. Dawson was 17 years old. The court then asked if the State "kn[e]w anything about

those robberies." The State explained that, in one, Mr. Dawson demanded property from the victim while displaying a semi-automatic pistol, and took her headphones, iPad or iPod, and purse. The State also said that Mr. Dawson "pointed the pistol into the victim's head pushing her head back somewhat" before fleeing. In the other, Mr. Dawson approached the victim, demanded her phone, wallet, and other property, and displayed a black semi-automatic pistol "with his right hand cocking the gun." Another offender displayed a handgun. The victim gave Mr. Dawson her phone, Mr. Dawson pushed her, and while she was on the ground, he kicked her "in the left rib area three times" before fleeing. Both victims identified Mr. Dawson—one from a photo array, the other from a lineup. Mr. Dawson was sentenced to concurrent eight years terms for the two robberies and a term of mandatory supervised release (MSR).

¶ 18 In mitigation, defense counsel noted that Mr. Dawson was 23 years old and that his mother was usually in court but was sometimes unable to make it due to work. Mr. Dawson had graduated from elementary school, attended high school until he was incarcerated for the 2013 armed robberies, and obtained his GED on June 11, 2018, while he was still incarcerated. Counsel explained that Mr. Dawson wanted to attend college, had been accepted at a university, and intended to study computer graphics. Before he was arrested, Mr. Dawson was employed as a cook at a local restaurant. Defense counsel requested the minimum sentence, arguing that Mr. Dawson was young and had made an effort while incarcerated to better his education so that he could be a productive citizen."

¶ 19 According to the presentence investigation report, Mr. Dawson did not have any juvenile adjudications of delinquency and had no gang affiliation. Mr. Dawson also informed the investigator that "he had been seeing a mental health professional (while incarcerated), once a month since 2017" and "[wa]s taking psychotropic medication (Zoloft and Remeron) due to being

diagnosed with PTSD and failure to adjust."

¶ 20     The trial court observed that Mr. Dawson had been on MSR for two armed robberies, then said, "And while still on [MSR], you're out running around with a gun that you never should have had. You are young. This was a possessory offense, but this is serious stuff. And you are one of the last people in the world who needs to be running around with a gun on the streets." After saying, "I will try to be as modest as I can," the judge sentenced Mr. Dawson to 12 years in prison. Defense counsel immediately tendered a motion to reconsider the sentence, which the trial court denied. This appeal followed.

¶ 21                                 II. JURISDICTION

¶ 22     Mr. Dawson's motion to reconsider his sentence was denied on February 7, 2019, and he timely filed a notice of appeal that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases. The sequence of events following our initial appeal is outlined above, *supra* ¶ 3, and the case is before us again on remand from our supreme court's supervisory order. *Dawson*, No. 129136.

¶ 23                                 III. ANALYSIS

¶ 24                   A. Counsel's Stipulation Was Not Ineffective Assistance

¶ 25     Mr. Dawson was convicted under a statute that provides, in relevant part:

>     "(a) A person commits the offense of being an armed habitual criminal if he or
> she *** possesses *** any firearm after having been convicted a total of 2 or more times
> of any combination of the following offenses:

>          (1) a forcible felony as defined in Section 2-8 of this Code[.]" 720 ILCS

7

5/24- 1.7(a)(1) (West 2016).

The parties agree that a juvenile adjudication is not a prior criminal conviction for the purpose of criminal statutes requiring a prior conviction as an element of the offense. *People v. Taylor*, 221 Ill. 2d 157, 171 (2006).

¶ 26     In 2013, when Mr. Dawson, then 17 years old, committed the underlying armed robberies, section 5-120 of the Juvenile Court Act of 1987 (Act) provided that, "[e]xcept as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2012).

¶ 27     However, in 2014, the law changed. Effective January 1, 2014, section 5-120 of the Act provides that "[e]xcept as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article, no minor who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2016).

¶ 28     Mr. Dawson's argument on appeal initially was that the State failed to meet its burden of proving beyond a reasonable doubt that he had two qualifying convictions. He contended that because he was 17 and not 18 when he committed his prior felony offenses, if they had been committed at the time he was charged for AHC, he likely would not have received adult convictions for those crimes.

¶ 29     Two justices of this court agreed and reduced his AHC conviction to the lesser-included offense of AUUW. *Dawson*, 2022 IL App (1st) 190422, ¶ 67. The majority relied in part on this court's reasoning in *People v. Gray*, 2021 IL App (1st) 191086, ¶¶ 15-16, *reversed*, 2024 IL 127815, where we found that the AHC statute had a present tense component which meant that—to meet its burden of showing the defendant had two qualifying adult convictions under the law in

8

effect at the time of his AHC offense—the State needed to prove either that the defendant was at least 18 years old at the time of each qualifying predicate offense or that the defendant would have been transferred to adult court as a 17-year-old. *Dawson*, 2022 IL App (1st) 190422, ¶ 44. Because one of the two stipulated-to offenses in *Gray* was committed when the defendant in that case was 17 years old, we concluded there that the State "did not show that the conviction was for conduct that 'is punishable' as a felony as of the date of the firearm possession in 2016" and thus failed to meet its burden. *Gray*, 2021 IL App (1st) 191086, ¶ 16.

¶ 30    Justice Mitchell dissented from our earlier decision in this case. He pointed out that when the legislature amended the Act in 2014 to raise the minimum age for prosecution in adult court from 17 to 18, it made the amendment prospective only, and the armed robbery convictions that Mr. Dawson received were adult convictions at the time he received them. *Dawson*, 2022 IL App (1st) 190422, ¶¶ 69-72 (Mitchell, J., dissenting).

¶ 31    On November 30, 2022, our supreme court granted the State's petition for leave to appeal in *Gray*. In *Gray*, as in this case, the defendant's lawyer had stipulated at trial that he had " 'two prior qualifying felony convictions for purposes of sustaining the charge of [AHC].' " *Gray*, 2024 IL 127815, ¶ 9. The supreme court found it unnecessary to address the question of whether the defendant's age at the time of the predicate offenses was relevant. *Id.* ¶ 28. Rather, "[s]ince defense counsel stipulated that [the] defendant had the two requisite convictions, thereby removing the State's obligation to provide evidence of the two convictions, [the] defendant [could not] directly attack the evidence." *Id.* The stipulation was "determinative." *Id.*

¶ 32    The supreme court in *Gray* went on to address whether the stipulation was ineffective assistance of counsel in that case. *Id.* ¶¶ 29-32. The court cited the standard in *Strickland v. Washington*, 446 U.S. 668, 687 (1984), requiring a defendant to show both that "(1) the attorney's

9

performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different." (Internal quotation marks omitted.) *Id*. ¶ 29. The supreme court found that because the defendant was 17 years old for only one of the two stipulated-to offenses, and he had an additional prior qualifying conviction after he was 17, he could not show prejudice under the second prong of *Strickland*. *Id.* ¶¶ 14, 32.

¶ 33    Our supreme court has ordered us to reconsider our decision in this case in light of its decision in *Gray*. Mr. Dawson now argues his trial counsel was ineffective for stipulating that he had two qualifying prior convictions because, since he had no other qualifying convictions, entering into that stipulation prejudiced the outcome of his case and fell below an objective standard of reasonableness.

¶ 34    In response, the State argues both that Mr. Dawson has forfeited this claim and that it is beyond the scope of our mandate. We reject both of these preliminary arguments. The supreme court's order asks us to consider "the effect" of *Gray* on the issue of whether the stipulation satisfied the State's burden to prove the requisite predicate adult convictions *and* to "determine if a different result is warranted." (Emphasis added.) *Dawson*, No. 129136. In his supplemental brief, Mr. Dawson considered "the effect" of *Gray* and decided to concede, for purposes of appellate argument, that the stipulation did, indeed, satisfy the State's burden of proof. However, Mr. Dawson then argued, per the supreme court's order, that a different result was nevertheless not warranted. Mr. Dawson's chosen line of argument is well within the supreme court's mandate.

¶ 35    Nor is the argument forfeited. In Mr. Dawson's initial brief in this appeal, he argued, "[i]n the alternative, should this Court not vacate Mr. Dawson's conviction, it should find that counsel

was ineffective for stipulating that Mr. Dawson had 'previously been convicted of two qualifying offenses.' " This introductory sentence was followed by several well-reasoned paragraphs full of citations to relevant case law, as well as to the underlying factual record. Thus, we will consider the merits of Mr. Dawson's claim that his counsel was ineffective for entering into this stipulation.

¶ 36    Mr. Dawson argues that, at the time of his trial in November 2018, it was unreasonable for his counsel to stipulate that his two armed robbery convictions for offenses committed when he was 17 years old qualified as predicate convictions for the AHC offense.

¶ 37    Just recently, our supreme court unanimously rejected the contention underlying that argument—that the State must prove that a defendant would have, at the time of the AHC charge, been prosecuted as an adult for any predicate offense to that charge. *People v. Wallace*, 2025 IL 130173. The court concluded that this was "simply not a reasonable reading of the statutory language." *Id.* ¶ 19. Thus, the development in the law that Mr. Dawson contends his counsel unreasonably failed to foresee has now been overturned by our supreme court. A lawyer certainly does not render deficient performance by failing to argue for a reading of a statute that our supreme court has since found to be unreasonable. Moreover, any claim that counsel was ineffective for not raising this argument would also fail at this point since Mr. Dawson could not show he was prejudiced by counsel's failure to make this argument. See *Strickland v. Washington*, 446 U.S. 668, 687 (1984) (ineffective assistance claim requires showing that lawyer's performance fell below an objective standard of reasonableness *and* prejudiced the defendant.)

¶ 38    In short, counsel's stipulation was not ineffective assistance.

¶ 39                          B. Course-of-Investigation Testimony

¶ 40    Mr. Dawson argues that the trial court erred by admitting, over his objection, the State's course-of-investigation testimony about receiving a radio dispatch regarding a shooting. The State

responds that the testimony was properly admitted to explain why officers were chasing him.

¶ 41 Generally, "[e]videntiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.* "The decision whether to admit evidence cannot be made in isolation," and the "trial court must consider a number of circumstances that bear on that issue, including questions of reliability and prejudice." *Id.* And, as our supreme court has made clear, "[r]easonable minds [can] differ about whether such evidence is admissible without requiring reversal under the abuse of discretion standard." (Internal quotation marks omitted.) *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 42 Mr. Dawson argues that the officers' testimony about the radio dispatch, which led them to be in the area and to chase him, was admitted in error. Normally, a radio dispatch by an out-of-court declarant would be considered inadmissible hearsay, which is "an out-of-court statement offered to prove the truth of the matter asserted." *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). However, when statements are admitted for the limited purpose of showing the course of a police investigation, they are not considered hearsay, because they are admitted to explain why the investigating officer who heard the statements took the steps they did, rather than for the truth of the matter asserted. *Id.* A statement that is not hearsay may still be excluded if it is unduly prejudicial (Ill. R. Evid. 403 (eff. Jan. 1, 2011)), *i.e.*, if it tends to lead the factfinder to decide facts on an improper basis (*People v. Lewis*, 165 Ill. 2d 305, 329 (1995)).

¶ 43 Here, in finding that the radio dispatch testimony was admissible, the trial judge said, "[T]o have a complete vacuum as to why the police are chasing somebody from the street into a house

12

wouldn't make any sense. And I think the Government should have an opportunity to explain and put in context why the officers are doing the things that they are doing." In addition, to the extent that the dispatch about shots fired was prejudicial, that prejudice was minimized by the trial court's admonishment that there was "no evidence" that Mr. Dawson was "involved" in a shooting. We find the trial court did not abuse its discretion in admitting the course-of-investigation testimony.

¶ 44    In support of his claim that the testimony was erroneously admitted, Mr. Dawson cites *Jura*, 352 Ill. App. 3d 1080, and *People v. Edgecombe*, 317 Ill. App. 3d 615 (2000), but both cases are distinguishable. In *Jura*, the defendant was convicted of unlawful use of a weapon by a felon. *Id.* at 1082. The evidence at trial established that, after receiving a radio dispatch about a man with a gun, the police arrived at the specified location, only to find five men present, including the defendant. *Id.* The State introduced testimony that the radio dispatch had further described the one with the gun as a white male, six feet tall, with a teardrop tattoo on his face, under his right eye. *Id.* 1082-84. The officers testified that, except for the defendant, none of the other men had teardrop tattoos on their faces. *Id.* After the officers arrived, the defendant threw a gun into a garbage can and fled down an alley but was quickly apprehended. *Id.* The appellate court said that it "could accept the State's argument that it used the hearsay merely to explain the investigation undertaken by the police" if the State had not repeatedly elicited the hearsay through multiple witnesses, relied on the hearsay in opening statement and closing argument, and "repeated the 'fact' the hearsay description matched the defendant although the trial judge had sustained objection to this question and that 'fact' was not in evidence." *Id.* at 1088-89. The appellate court found, in light of the credibility dispute between the defendant and the police at trial about who possessed the gun, that this error was not harmless. *Id.* at 1091.

¶ 45    *Jura* is readily distinguishable from this case. In *Jura*, the radio description was used to

distinguish the defendant from among a group of possible other suspects also present at the scene, and no limiting instruction was provided. Here, by contrast, the trial court gave a particularly clear limiting instruction, reiterating to the jurors that Mr. Dawson was "not accused of shooting anybody," that that was "not what this case [wa]s about," and that they were hearing about shots fired "not to say that somebody was actually shot," because there was "no evidence that [Mr. Dawson] was involved in that," but only to "indicate why the officer was where he was and did what he did." Unlike in *Jura*, the dispatch here was also not used to distinguish Mr. Dawson from other suspects present at the scene. In addition, in *Jura*, the defendant started running upon seeing the police and was apprehended outside. See *Illinois v. Wardlow*, 528 U.S. 119, 123-25 (2000) ("[h]eadlong" flight immediately upon seeing the police enter an area, combined with presence in a high-crime area, supports a finding of reasonable suspicion). As a result, the State in *Jura* needed less explanation for the police chase than here, where Mr. Dawson was already running when the police arrived and the police chased him into a home.

¶ 46    *Edgecombe*, 317 Ill. App. 3d 615, is also distinguishable from this case. There, the defendant was convicted of armed robbery. *Id.* at 617. The evidence at trial established that, after the robbery, the victim reported that three men had robbed him and drove off, and he provided a description of the three men and their car. *Id.* One of the responding officers testified at trial that, while at the scene, he received a radio call from another officer, who stated that the police had stopped a car matching the description provided by the victim, that the car contained three men, and that the three men fled but one was apprehended. *Id.* Minutes later, the victim identified the apprehended man as one of the three robbers, identified the car as the one they had fled in, and later identified the defendant as one of the other robbers from both a photo array and an in-person lineup. *Id.*

14

¶ 47    The appellate court in *Edgecombe* reversed and remanded for a new trial based on certain remarks by the State that highlighted the defendant's "failure to testify" and that improperly shifted the burden of proof. *Id.* at 624. Although not reversing based on the defendant's other claims, the appellate court still addressed them "because they might arise on retrial," and concluded that the radio call's contents were erroneously admitted. *Id.* at 624, 627.

¶ 48    Unlike in this case, the hearsay put before the jury in *Edgecombe*, without any limiting instruction, was essentially another officer's assertion that the defendant ran upon seeing the police. The fact that the defendant ran at that moment was completely unnecessary to explain what the police did next. *Id.* Here, we cannot find that the trial court abused its discretion by concluding that the jurors needed some explanation of why the police suddenly started chasing Mr. Dawson through the street and into a home. As the trial court explained, "[o]therwise it just seems like they are out there randomly barging into people's homes for no reason whatsoever." We find no abuse of discretion.

¶ 49                                C. Sentencing

¶ 50    Mr. Dawson also argues that his 12-year sentence was improper. We did not address this issue in our original opinion because we remanded for resentencing on the reduced charge of AUUW. However, because we are now affirming Mr. Dawson's AHC conviction, we will address his sentencing arguments.

¶ 51    According to Mr. Dawson, we should reduce his sentence or remand for resentencing because (1) the trial court improperly considered factors inherent in the AHC offense in aggravation and (2) his sentence of 12 years was excessive. We consider each argument in turn.

¶ 52        1. The Trial Court Did Not Improperly Rely on a Factor Inherent to the Offense

¶ 53    Initially, the State argues, and Mr. Dawson concedes, that he has forfeited consideration of

15

whether the court considered an improper factor in sentencing because his trial counsel did not object or raise it in the motion to reconsider his sentence. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see also 730 ILCS 5/5-4.5-50(d) (West 2016) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence.").

¶ 54    Mr. Dawson nonetheless asks that we review this issue under the plain-error doctrine, which allows a reviewing court to consider unpreserved errors when a clear or obvious error occurred and "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Mr. Dawson also argues, in the alternative, that his trial counsel was ineffective for failing to raise this issue at sentencing. To show ineffective assistance, a defendant must show both that "counsel's performance fell below an objective standard of reasonableness" and that "deficient performance resulted in prejudice." *People v. Lewis*, 2022 IL 126705, ¶ 44. Because "the failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine" (*People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47), we first consider whether error occurred at all.

¶ 55    "There is a general prohibition against the use of a single factor both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed." (Emphasis in original.) *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). "Such dual use of a single factor is sometimes referred to as 'double enhancement.' " *Id.* at 84. As our supreme court explained, a double enhancement is generally prohibited because "it is assumed that the legislature, in determining the appropriate range of punishment for a criminal offense, necessarily took into account the factors inherent in the offense." *Id.* Our supreme

court has also cautioned, however, that the rule should "not be rigidly applied," where it would "restrict[ ] the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence." (Internal quotation marks omitted.) *People v. Thomas*, 171 Ill. 2d 207, 226-27 (1996). When determining whether a trial court considered an improper factor in imposing sentence, the reviewing court considers the record as a whole, rather than focusing on a few words or statements. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). The defendant must affirmatively show that the sentence was based on an improper consideration. *Id.*

¶ 56    Mr. Dawson argues that the trial court subjected him to an improper double enhancement when it considered his possession of a firearm and his prior convictions—both factors inherent in the offense of AHC—as aggravating factors at sentencing.

¶ 57    We considered a similar argument in *People v. Brown*, 2018 IL App (1st) 160924. On appeal from his 13-year sentence for AHC, the defendant in *Brown* argued the court improperly considered his prior conviction for unlawful use or possession of a weapon by a felon as a factor in aggravation when it served as a predicate offense for his conviction. *Id.* ¶¶ 7, 19. In rejecting this argument, we relied on our supreme court's decision in *Thomas*, 171 Ill. 2d 207:

> "In *Thomas* [citation], our supreme court explained, 'the discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the defendant, within the available parameters, is a requisite part of every individualized sentencing determination.' Thus, '[t]he judicial exercise of this discretion, in fashioning an appropriate sentence within the framework provided by the legislature, is not properly understood as an 'enhancement.' [Citation.] As part of that framework, the trial court must consider a number of aggravating and mitigating factors in imposing its sentence, including the defendant's criminal history. [Citation.] *Thomas*, therefore, found the trial court's use of

17

prior convictions to impose a Class X sentence did not preclude it from 'reconsidering' the same prior convictions and using them a second time as an aggravating factor in sentencing." *Brown*, 2018 IL App (1st) 160924, ¶ 20 (quoting *Thomas*, 171 Ill. 2d at 224-25, 227-29).

¶ 58 We acknowledged in *Brown* that *Thomas* "concerned the mandatory Class X sentencing statute rather than the Class X AHC offense," but nonetheless found the reasoning in *Thomas* applicable. *Id.* ¶ 21. Ultimately, we found that the trial court could properly consider the defendant's prior UUWF conviction as part of his criminal history because "while the *fact* of [the defendant's] prior UUWF conviction determined his eligibility for an AHC charge, it [wa]s the *nature and circumstances* of that conviction which, along with other factors in aggravation and mitigation, determined the exact length of his sentence." (Emphases in original.) *Id.* (citing *Thomas*, 171 Ill. 2d at 227-28).

¶ 59 Here, as in *Brown*, there was no improper double enhancement. In sentencing Mr. Dawson to 12 years in prison, the trial court did not focus on the *fact* that Mr. Dawson had two prior felony convictions but instead focused on the *circumstances* of those convictions, an entirely proper consideration for a sentencing court. See also *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 54 (finding no reversible error based on a double enhancement where the trial court referred to the defendant's prior convictions, also used as predicate convictions for his AHC conviction, "in finding that he should not receive the minimum six-year sentence").

¶ 60 Mr. Dawson urges us to disagree with *Brown*, arguing that it was wrongly decided because although it relied on the holding in *Thomas*, it "failed to acknowledge that the Illinois Supreme Court had held the exact opposite" in *People v. Hobbs*, 86 Ill. 2d 242 (1981). This is simply incorrect. The supreme court in *Thomas* explained that "[i]n *Hobbs*, the defendant's misdemeanor

18

theft conviction was enhanced to a Class 4 felony on the basis of a prior felony theft conviction, and the same prior felony theft conviction was again used to impose an extended term sentence." *Thomas*, 171 Ill. 2d at 225. The *Hobbs* court found "that because the prior felony theft conviction was an *element* of the later felony theft, serving to enhance the offense from a misdemeanor to a felony, use of the same prior theft conviction to impose an extended term" was an improper double enhancement. *Id.* at 225-26. However, the court in *Thomas* also noted that the *Hobbs* holding "was limited to situations where the same prior conviction is used both to enhance the class of an offense and to enhance the punishment for that offense." *Id.* at 226. Contrary to Mr. Dawson's argument, that is not what happened here. *People v. Chaney*, 379 Ill. App. 3d 524 (2008), which Mr. Dawson also relies on, is inapplicable to this case for the same reason. See *id.* at 532 (finding an impermissible double enhancement where at least one of the defendant's two prior Class 2 felony convictions "was used both to establish the offense as a Class 2 felony and then also used to impose Class X sentencing").

¶ 61    Mr. Dawson also relies on *People v. Taylor*, 2022 IL App (5th) 180192. There, the appellate court "briefly acknowledge[d]" the defendant's claim of sentencing error and found that he was subject to an improper double enhancement because the trial court considered a prior felony as an aggravating factor at sentencing after it had also been used as a predicate for his armed habitual criminal conviction. *Id.* ¶¶ 54-55. In *Taylor*, however, there is no indication that the trial court did anything other than consider the *fact* of the defendant's prior conviction. *Id.* ¶ 21. Here, in contrast, the trial court specifically asked for the facts of the prior convictions, making clear its intent to consider the nature and circumstances of those convictions in aggravation rather than simply the fact that they existed. We are not persuaded by *Taylor*.

¶ 62    Mr. Dawson argues that the trial court also improperly relied on the fact that he was in

possession of a firearm in aggravation. At sentencing, the trial court did note that while Mr. Dawson was on MSR, he was "running around with a gun that [he] never should've had," and that it "was a possessory offense, but this is serious stuff." It is clear to us that the court was, once again, not referencing or relying on the *fact* that Mr. Dawson was in possession of the gun, but rather that he was in possession of the gun when he was on MSR for his prior offenses, which also involved the use of a gun. The trial court's consideration of the nature and circumstances of the offense for which it was sentencing Mr. Dawson was appropriate.

¶ 63                                  2. Mr. Dawson's Sentence Is Not Excessive

¶ 64    Finally, Mr. Dawson argues that his 12-year sentence was excessive based on the nature of the offense, his background, the mitigation evidence, and subsequent changes in juvenile law.

¶ 65    Sentencing involves a careful evaluation of various mitigating and aggravating factors (*People v. Williams*, 2017 IL App (1st) 150795, ¶ 44) and balancing the seriousness of the offense with the defendant's rehabilitative potential (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46). A trial court also has wide discretion in sentencing, and "its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." (Internal quotation marks omitted.) *Id.* at 212-13.

¶ 66    Mr. Dawson was found guilty of AHC, a Class X felony (720 ILCS 5/24-1.7(a), (b) (West 2016)), with a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2016)). Because Mr. Dawson's sentence of 12 years was well within the sentencing range, it is presumed proper and reviewed for an abuse of discretion. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50.

An abuse of discretion occurs when a sentence "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212. "This court will not substitute its judgment for that of the trial court merely because we would have weighed the sentencing factors differently." *Jones*, 2019 IL App (1st) 170478, ¶ 50.

¶ 67    In this case, the trial court did not abuse its discretion. Before the sentencing hearing began, the court ensured that the presentence investigation report—which included information about Mr. Dawson's social history, education and employment, family, health history, and substance use— had been distributed. When the State presented only the fact of Mr. Dawson's prior criminal convictions in aggravation, the court asked the State for more information about those convictions. The court listened to defense counsel's argument in mitigation and Mr. Dawson's statement in allocution. When sentencing Mr. Dawson, the court acknowledged that he was young, and although it did not mention Mr. Dawson's other mitigating evidence, "it was not required to recite or assign a value to each factor in mitigation or aggravation that form[ed] part of the record." *Id.* ¶ 55.

¶ 68    Mr. Dawson argues that his sentence was extreme "[c]onsidering that [AHC] is a possession offense." He also points out that if he had "not been eligible to be convicted of [AHC]," he would have faced a less serious felony offense with a lower sentencing range. All of that may be true, but it is not relevant. The court was constrained by the sentencing range for AHC and, within that range of 6 to 30 years, his 12-year sentence was on the low end.

¶ 69    Mr. Dawson also argues that the court did not consider the mitigating factors—specifically his youth, changes in the law with respect to young offenders, his educational and employment pursuits, his strong support system, and his mental illness. However, the trial court "is not required

to recite or assign a value to each factor in mitigation or aggravation that forms part of the record," and when mitigation evidence has been presented to the trial court, "it is presumed the court considered those factors, absent some indication to the contrary." *Jones*, 2019 IL App (1st) 170478, ¶¶ 54-55. In this case, there were also aggravating circumstances, including the fact that Mr. Dawson was found by a jury to be in possession of a firearm, and he possessed that firearm while, as the judge noted, he was still on MSR for two offenses in which he had used a gun to rob women on the street. Mr. Dawson is essentially asking us to reweigh these factors, which we have no authority to do. *Alexander*, 239 Ill. 2d at 214-15.

¶ 70    Under these circumstances, we find no abuse of discretion.

¶ 71                          D. Motion for Immediate Release

¶ 72    Mr. Dawson has a pending motion for immediate release. In light of our resolution of the issues in this case, that motion is denied.

¶ 73                          IV. CONCLUSION

¶ 74    For the foregoing reasons, we affirm Mr. Dawson's conviction.

¶ 75    Affirmed.